Charles Lee LEVAN, Jr., Appellant,

v.

STATE of Texas, Appellee.

No. 11–01–00219–CR.

Court of Appeals of Texas, Eastland.

Nov. 21, 2002.

Discretionary Review Refused March 5, 2003.

Robert G. Estrada, Attorney At Law, Wichita Falls, for Appellant.

Tim Ford, District Attorney, Palo Pinto, for Appellee.

Panel consists of: ARNOT, C.J., and McCALL, J., and DICKENSON, S.J.*

Opinion

W.G. ARNOT, III, Chief Justice.

The jury convicted appellant of the offense of murder and assessed his punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of 35 years.[1] Appellant alleges in his sole issue on appeal that the trial court committed reversible error by denying his request for a jury charge on the lesser included offense of criminally negligent homicide. We affirm.

The indictment alleged that appellant intentionally or knowingly caused the victim's death by shooting her with a firearm on or about October 20, 2000. Appellant gave a written statement to the police on the morning after the shooting detailing his relationship with the victim and his version of the incident in question. Appellant and the victim had been involved in a stormy romantic relationship for approximately 4 years prior to the incident. They had a child together who was almost 18 months old at the time of her mother's death. Appellant and the victim were having difficulties in the months prior to the incident. A protective order had been issued against appellant restricting his contact with the victim and their daughter. Appellant testified that he and the victim "patched things up" a few days after the protective order was issued. However, appellant was also having a romantic relationship with another woman during this period.

Appellant testified that he went to the victim's house at her invitation at approximately 11:30 p.m. on October 20, 2000. He had previously taken a shower at his girlfriend's house. Upon his arrival at the victim's house, appellant and the victim began arguing about his relationship with the other woman. Appellant testified that he walked out of the house with the intention of leaving rather than continuing the argument. After starting his vehicle, appellant decided to go back inside the house to get some of his clothes. The clothing was located in a closet. Appellant testified that he picked up a ".38 special" revolver which was located on the top shelf of the closet so that he could take it with him. He further testified that, when he attempted to place the revolver into his duffel bag, the victim attempted to grab it from him. He stated that the revolver accidently fired as he attempted to block the victim from grabbing the revolver. The victim subsequently died as a result of a single gunshot wound to her head and neck.

Emergency personnel responded to the scene within a few minutes. The first police officer at the scene observed appellant giving the victim CPR (cardiac pulmonary resuscitation). The officer also observed the revolver lying in plain view upon his arrival. When asked what had happened, appellant stated to the officer: "It was an accident. We were looking at the gun, and it just went off." Appellant continued performing CPR on the victim until an ambulance arrived.

The revolver recovered from the scene contained five rounds of ammunition, one of which had been fired. With respect to the revolver's origin, appellant testified that he found the revolver in the woods near a friend's house three days prior to the incident in question. He gave the revolver to the victim two days prior to her death for her protection. Appellant

---

* Bob Dickenson, Retired Justice, Court of Appeals, 11th District of Texas at Eastland sitting by assignment.

1. The jury additionally imposed a fine of $10,000.

testified that he showed the victim how to use the revolver. He further testified that he thought he had unloaded the revolver prior to putting it on the shelf in the closet. One of appellant's friends testified that he observed appellant placing the revolver in the closet on the morning prior to the incident.

Several crime lab analysts testified about tests performed on the revolver, the victim, and her clothing. The pathologist who performed the autopsy testified that the bullet entered the left side of the victim's neck near the base of the skull. The bullet traveled left to right through the victim's neck on a slightly upward path. The bullet perforated the victim's spine during the course of its travel. The pathologist testified that, based on her findings, the range of fire was greater than three feet. Gunpowder residue was found on the palm of the victim's right hand and on her shirt collar. Tests performed on the revolver revealed that it stopped depositing residue at distances greater than six feet. Accordingly, the evidence showed that the range of fire between the revolver and the victim was a distance of three to six feet.

The State offered the testimony of an inmate who had been incarcerated with appellant after his arrest. The inmate is a "jailhouse lawyer" who assists other inmates in filing motions in their cases. He testified that appellant sought his assistance while awaiting trial. The inmate required appellant to provide him with all of the facts about appellant's case in order to assist him. The inmate testified that appellant prepared a written statement of the events. The version of the events which appellant provided to the inmate differed from what appellant told the police and the jury. As per the inmate's version, appellant intentionally fired the revolver in order to scare the victim from

calling the police. However, appellant did not intend for the bullet to strike her when he fired the revolver.

■■■ Appellant requested that the jury be charged on the lesser included offenses of manslaughter and criminally negligent homicide. See TEX. PENAL CODE ANN. §§ 19.04 & 19.05 (Vernon 1994). The trial court only granted appellant's request with respect to the charge on manslaughter. Appellant asserts on appeal that he was also entitled to a charge on the lesser included offense of criminally negligent homicide. A defendant is entitled to a charge on a lesser offense only if the lesser offense is a "lesser included offense" of the offense charged and only if there is some evidence that would permit the jury rationally to find that, if the defendant is guilty, he is guilty only of the lesser offense. See *Rousseau v. State*, 855 S.W.2d 666, 672 (Tex.Cr. App.), *cert. den'd*, 510 U.S. 919, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993). The credibility of the evidence and whether it conflicts with other evidence or is controverted may not be considered in determining whether an instruction on a lesser included offense should be given. See *Banda v. State*, 890 S.W.2d 42, 60 (Tex.Cr.App.1994), *cert. den'd*, 515 U.S. 1105, 115 S.Ct. 2253, 132 L.Ed.2d 260 (1995). Regardless of its strength or weakness, if any evidence raises the issue that the defendant was guilty only of the lesser included offense, then the charge must be given. See *Medina v. State*, 7 S.W.3d 633, 638 (Tex.Cr.App. 1999), *cert. den'd*, 529 U.S. 1102, 120 S.Ct. 1840, 146 L.Ed.2d 782 (2000).

■■■ Criminally negligent homicide is a lesser included offense of murder. See *Thomas v. State*, 699 S.W.2d 845, 847 (Tex. Cr.App.1985). We must, therefore, determine if there is some evidence that would allow a rational jury to find that, if appellant is guilty, he is guilty only of criminally

negligent homicide. A person commits criminally negligent homicide "if he causes the death of an individual by criminal negligence." Section 19.05. TEX. PENAL CODE ANN. § 6.03(d) (Vernon 1994) defines criminal negligence as follows:

A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

The charge of criminally negligent homicide is required in a particular case if the record contains evidence showing that the defendant was unaware of the risk or that he failed to perceive the risk created by his conduct. *Thomas v. State*, supra at 850–51.

 An allegation of accidental discharge of a gun does not necessarily raise the issue of criminally negligent homicide. *Thomas v. State*, supra at 850. The attendant circumstances from which the defendant's mental state can be inferred must be collectively examined in light of the definition of criminally negligent conduct. *Thomas v. State*, supra at 850. Other evidence raising the issue of whether a defendant was aware of the risk must be presented before such charge is required. *Thomas v. State*, supra at 850. "Evidence that a defendant knows a gun is loaded, that he is familiar with guns and their potential for injury, and that he points a gun at another, indicates a person who is aware of a risk created by that

conduct and disregards the risk." *Thomas v. State*, supra at 850.

In *Thomas*, there was evidence that the defendant knew the gun was loaded, that he was familiar with guns and the potential for injury, and that he pointed a gun toward someone else. *Thomas v. State*, supra at 851–52. Unlike the facts in *Thomas*, testimony was offered showing that appellant had only recently acquired the revolver. Appellant indicated in his written statement to the police that he thought the revolver was unloaded. He further testified that the revolver fired as a result of the victim attempting to grab it from his hand as he attempted to place it in a duffel bag. Viewing the evidence in the light most favorable to appellant's theory, there is evidence that he may have been unaware of or failed to perceive the risk associated with scuffling over the revolver. As noted by the court in *Thomas*, evidence of accidental discharge, coupled with the defendant's belief that the gun was not loaded, raises an inference that the defendant did not perceive a risk of injury or death. See *Branham v. State*, 583 S.W.2d 782 (Tex.Cr.App.1979). Accordingly, we agree with appellant's contention that the trial court erred in failing to charge the jury on the theory of criminally negligent homicide. However, we find that the trial court did not commit reversible error in failing to give the requested charge.

 In *Saunders v. State*, 913 S.W.2d 564, 571 (Tex.Cr.App.1995), the Court of Criminal Appeals discussed the harm analysis to be applied when properly requested instructions on lesser included offenses have not been given to the jury. In instances in which the trial court refused to instruct the jury on any properly requested lesser included offenses, a finding of harm is essentially automatic because the jury was denied the opportunity to convict the defendant of the lesser included of-

fenses. *Saunders v. State,* supra at 571; see *Otting v. State,* 8 S.W.3d 681, 689 (Tex.App.-Austin 1999, pet'n ref'd, untimely filed). This is true because the jury, believing the accused to have committed some crime but given the option only to convict him of the greater offense, may choose to convict him of the greater offense, rather than acquit altogether, even though it had a reasonable doubt as to whether he really committed the greater offense. *Saunders v. State,* supra at 571. A different situation may occur, however, when the jury is charged on some of the requested lesser included offenses. As explained in *Jiminez v. State,* 953 S.W.2d 293, 300 (Tex.App.-Austin 1997, pet'n ref'd):

> A different situation is presented if the trial court submitted one lesser included offense raised by the evidence while declining to submit another that was also raised. Under this circumstance, the jury's options were not limited to conviction of the greater offense or acquittal, and the risk that the jury convicted of the greater offense despite a reasonable doubt is not so apparent. If the jury harbored a reasonable doubt as to the defendant's guilt of the charged offense but at the same time believed him guilty of some offense, it was not forced to choose between conviction and acquittal, but had the option of convicting him of a lesser offense that was submitted. That it did not do so may indicate that the failure to give the other lesser included offense instruction was harmless error.

 The culpable mental states required for manslaughter and criminally negligent homicide are similar. *Thomas v. State,* supra at 849. A person commits the offense of manslaughter "if he recklessly causes the death of an individual." Section 19.04. As per TEX. PENAL CODE ANN. § 6.03(c) (Vernon 1994):

> A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

Manslaughter and criminally negligent homicide both involve death caused by a risk created by the defendant. *Thomas v. State,* supra at 849. If the defendant is aware of the risk his conduct creates but consciously disregards it, his conduct is reckless and, therefore, constitutes manslaughter. *Thomas v. State,* supra at 849. If the defendant is not aware of the risk his conduct creates, he is criminally negligent if he should have been aware of the risk his conduct created. *Thomas v. State,* supra at 849.

In order for the jury to have convicted appellant of either manslaughter or criminally negligent homicide, it would have had to have found that the victim's death was not caused by appellant intentionally or knowingly causing her death but rather by some risk created by appellant either knowingly or unknowingly. The inclusion of the instruction on manslaughter presented the jury with an option for convicting appellant for causing the victim's death by a risk created by his conduct. The jury rejected this option by finding that appellant intentionally or knowingly caused the victim's death. If the jury had harbored a reasonable doubt that appellant intentionally or knowingly caused the victim's death, it would not likely have convicted him of murder anyway for lack of an acceptable compromise. See *Saunders v.*

*State*, supra at 573–74. It is more likely the jury convicted appellant of murder because it believed that his intent had been to intentionally or knowingly cause the victim's death. See *Saunders v. State*, supra at 573–74. The omission of the charge on criminally negligent homicide was, therefore, harmless. Appellant's sole point of error is overruled.

The judgment of the trial court is affirmed.