ACCEPTED
01-14-00486-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
3/31/2015 5:53:09 PM
CHRISTOPHER PRIN
CLERK

**No. 01-14-00486-CR**

In the
**Court of Appeals for the First District of Texas**
At Houston

——————◆——————

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

3/31/2015 5:53:09 PM

CHRISTOPHER A. PRINE
Clerk

**No. 1363068**
In the 184th District Court
Of Harris County, Texas

——————◆——————

**MARK AUGUSTIN CASTELLANO**
*Appellant*
V.
**THE STATE OF TEXAS**
*Appellee*

——————◆——————

STATE'S APPELLATE BRIEF

——————◆——————

**DEVON ANDERSON**
District Attorney
Harris County, Texas

**TIFFANY JOHNSON**
**JAMIE REYNA**
Assistant District Attorneys
Harris County, Texas

**HEATHER A. HUDSON**
Assistant District Attorney
Harris County, Texas
State Bar No. 24058991

1201 Franklin, Suite 600
Houston, Texas  77002
Tel.:  713/755-5826
Fax No.:  713/755-5809

*Counsel for Appellee*

ORAL ARGUMENT WAIVED

# IDENTIFICATION OF THE PARTIES

Pursuant to Texas Rule of Appellate Procedure 38.2(a)(1)(A), a complete list of the names of all interested parties is provided below.

**COUNSEL FOR THE STATE:**

Ms. Devon Anderson—District Attorney

Ms. Jamie Reyna
Ms. Tiffany Johnson —Assistant District Attorneys at trial

Ms. Heather Hudson—Assistant District Attorney on appeal

**APPELLANT:**

Mark Augustin Castellano

**COUNSEL FOR APPELLANT:**

Mr. Eric Davis
Ms. Jackie Carpenter—Assistant Public Defenders at trial

Ms. Jani Maselli Wood—Assistant Public Defender on appeal

**PRESIDING JUDGE:**

Hon. Jan Krocker

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to TEX. R. APP. P. 39.7, the State waives oral argument.

## TABLE OF CONTENTS

IDENTIFICATION OF THE PARTIES..........................................................................i

STATEMENT REGARDING ORAL ARGUMENT......................................................ii

INDEX OF AUTHORITIES .................................................................................iv

STATEMENT OF THE CASE................................................................................ 1

STATEMENT OF FACTS .................................................................................... 1

SUMMARY OF THE ARGUMENT ........................................................................ 7

REPLY TO APPELLANT'S FIRST POINT OF ERROR............................................. 9

    I.    Standard of review and applicable law.............................................. 9

    II.   The record contains evidence supporting the jury's rejection of the issue of sudden passion.................................................................. 10

    III.  Appellant did not establish the issue of sudden passion as a matter of law. .............................................................................................13

REPLY TO APPELLANT'S SECOND POINT OF ERROR ...................................... 14

    I.    Standard of review and applicable law............................................ 14

    II.   Service of request for notice. ......................................................... 15

    III.  The notice provided by the State was reasonable under the circumstances. ...............................................................................16

    IV.  Appellant was not harmed by the lack of notice. ......................... 18

REPLY TO APPELLANT'S THIRD POINT OF ERROR......................................... 19

I. There is no evidence that would permit the jury rationally to determine that appellant was guilty only of the lesser offense of criminally negligent homicide. ....................................................................... 19

II. Any error in the trial court's failure to submit a lesser included offense instruction on criminally negligent homicide was harmless .......... 23

CONCLUSION AND PRAYER ...................................................................... 25

CERTIFICATE OF COMPLIANCE ............................................................... 25

CERTIFICATE OF SERVICE ........................................................................ 26

# INDEX OF AUTHORITIES

## CASES

*Allen v. State,*
 202 S.W.3d 364 (Tex. App.--Fort Worth 2006, pet. ref'd) ......................................... 18

*Bradshaw v. State,*
 244 S.W.3d 490 (Tex. App.--Texarkana 2007, pet. ref'd) ............................................ 13

*Cleveland v. State,*
 177 S.W.3d 374 (Tex. App.--Houston [1st Dist.] 2005, pet. ref'd) ........................... 10

*Espinosa v. State,*
 853 S.W.2d 36 (Tex. Crim. App. 1993) ........................................................................ 15

*Henderson v. State,*
 29 S.W.3d 616 (Tex. App.--Houston [1st Dist.] 2000, pet. ref'd) ........................ 15, 17

*Hernandez v. State,*
 914 S.W.2d 226 (Tex. App.--Waco 1996, no pet.) .................................................. 16, 18

*Jackson v. State,*
 248 S.W.3d 369 (Tex. App.--Houston [1st Dist.] 2007, pet. ref'd) ............................ 20

*Johnson v. State,*
 967 S.W.2d 410 (Tex. Crim. App. 1998) ...................................................................... 18

*Juarez v. State,*
 409 S.W.3d 156 (Tex. App.--Houston [1st Dist.] 2013, pet. ref'd) ............................ 23

*Levan v. State,*
 93 S.W.3d 581 (Tex. App.--Eastland 2002, pet. ref'd) ........................................... 23, 24

*Matlock v. State,*
 392 S.W.3d 662 (Tex. Crim. App. 2013) ...................................................................... 10

*McKinney v. State,*
 179 S.W.3d 565 (Tex. Crim. App. 2005) ...................................................................... 12

*Moncivais v. State,*
 425 S.W.3d 403 (Tex. App.--Houston [1st Dist.] 2011, pet. ref'd) ................... 9, 10, 13

*Naasz v. State,*
 974 S.W.2d 418 (Tex. App.--Dallas 1998, pet. ref'd) ...................................................... 9

*Owens v. State,*
 119 S.W.3d 439 (Tex. App.--Tyler 2003, no pet.) ......................................................... 17

*Rousseau v. State,*
855 S.W.2d 666 (Tex. Crim. App. 1993) ........................................................ 20

*Saunders v. State,*
913 S.W.2d 564 (Tex. Crim. App. 1995) .................................................... 23, 24

*Scott v. State,*
57 S.W.3d 476 (Tex. App.--Waco 2001, pet. ref'd) ....................................... 16

*Sebalt v. State,*
28 S.W.3d 819 (Tex. App.--Corpus Christi 2000, no pet.) .......................... 15, 16

*Self v. State,*
860 S.W.2d 261 (Tex. App.--Fort Worth 1993, pet. ref'd) ............................ 18

*Smith v. State,*
355 S.W.3d 138 (Tex. App.--Houston [1st Dist.] 2011, pet. ref'd) ............... 13

*Stadt v. State,*
182 S.W.3d 360 (Tex. Crim. App. 2005) ........................................................ 20

*Thomas v. State,*
699 S.W.2d 845 (Tex. Crim. App. 1985) ........................................................ 20

*Trujillo v. State,*
227 S.W.3d 164 (Tex. App.--Houston [1st Dist.] 2006, pet. ref'd) .............. 20

*Webb v. State,*
36 S.W.3d 164 (Tex. App.--Houston [14th Dist.] 2000, pet. ref'd) .......... 14, 15, 16, 17

**STATUTES**

TEX. PENAL CODE ANN. § 19.02(a)(1) (West 2013) ........................................... 9

TEX. PENAL CODE ANN. § 19.02(a)(2) (West 2013) ........................................... 9

TEX. PENAL CODE ANN. § 19.02(d) (West 2013) ............................................... 9

TEX. PENAL CODE ANN. § 19.05(a) (West 2013) ............................................... 20

TEX. PENAL CODE ANN. § 6.03(d) (West 2013) ............................................... 20

**RULES**

TEX. R. APP. P. 44.2(b) ...................................................................................... 18

TEX. R. EVID. 404(b) ...................................................................................... 14, 15

**TO THE HONORABLE COURT OF APPEALS:**

## STATEMENT OF THE CASE

Appellant was charged by indictment with the offense of murder. (C.R. 31). On June 6, 2014, a jury convicted appellant of the charged offense and sentenced him to 27 years' confinement in the Institutional Division of the Texas Department of Criminal Justice. (C.R. 300-01). Appellant filed a timely written notice of appeal. (C.R. 305-06).

## STATEMENT OF FACTS

Appellant was involved in a volatile relationship with the complainant, Michelle Warner. At the time of the offense, appellant and Warner were living together in an apartment with their 3-year-old son, Cayden. (5 R.R. 30, 37). On Monday, September 24, 2012, Warner failed to show up for work at the law firm where she had recently obtained a position as a paralegal. (5 R.R. 144, 148-49). The law firm unsuccessfully attempted to contact Warner. (5 R.R. 148-49). When Warner did not show up for work again the following day, her employer notified the police that she was missing. (5 R.R. 153, 155).

Warner's brother, David Chiffin, learned that Warner was missing on Monday, September 24th, when her ex-husband called and notified him that Warner had not shown up to pick up their 11-year-old daughter, Hayley. (5 R.R. 34-35). Chiffin called appellant in an attempt to locate Warner. (5 R.R. 35-36). Appellant told Chiffin that

he and Warner had been in an argument Saturday evening, and that she had left the apartment sometime that night. (5 R.R. 37; 15 R.R. SX 5). Appellant said that Warner did not take her car, and she left Cayden behind. (15 R.R SX 5).

On September 25, 2012, the police conducted a welfare check at appellant's apartment, but did not find anything unusual. (5 R.R. 133-34). The police filed a missing persons report. (5 R.R. 135). On September 27, 2012, Officer Danny Do with the Missing Persons Unit of the Houston Police Department called appellant. (5 R.R. 192). During their recorded telephone conversation, appellant told Officer Do that he came home from work on Saturday evening, September 22nd, and got into a fight with Warner. (15 R.R. SX 6). Appellant said Warner punched him in the face and then went into her room and shut the door. *Id.* Appellant told Officer Do that he went to her room later that evening to confront her, but Warner was gone. *Id.* Appellant stated that Warner left her car, but took her purse, keys, and cell phone. *Id.* Appellant also said that Warner was a drug user and had a history of leaving for several days at a time. *Id.*

A few weeks before Warner's disappearance, appellant submitted his resignation from his job at SugarLandPC, where he worked as an IT technician. (6 R.R. 55, 60). Appellant told his employer that he was going to live with his parents in Odessa, Texas to get away from Warner. (6 R.R. 60). Appellant subsequently withdrew his resignation, but asked his employer if he could take off a week from

2

work beginning on Monday, September 24th, so that he could find childcare for Cayden. (9 R.R. 167-68).

Appellant told Officer Do that he packed up Cayden, got in Warner's car, and drove from Houston to his parents' home in Odessa that Saturday night. (15 R.R. SX 6). Appellant arrived in Odessa the following morning and told his parents that he and Warner had been in a fight, and that she had left. (8 R.R. 96, 99). Appellant told Officer Do that he drove back to Houston on Sunday to get the rest of his clothing. (15 R.R. SX 6). On Monday morning, appellant went to work to turn in his resignation, and then returned to Odessa. (6 R.R. 73; 9 R.R. 168; 15 R.R. SX 6). Appellant also said that he left behind a note for Warner. (15 R.R. SX 6). The police found a note on a mirror in appellant's apartment which stated:

Michelle,

Cayden and I are gone, you can have the apartment all to yourself. I am taking the car. Since you can't pay it, and I now owe my dad $3K b/c of you, get it refinanced through your rich daddy and get my name off of it. You are welcome to see Cayden, but since you are on a drug-filled weekend I guess you [won't call] since Grandma called and said you turned your phone off. I will get you drug tested this time! Bitch!

The Asshole

(6 R.R. 111-13; 15 R.R. 220).

The police also recovered surveillance footage of the parking lot in front of appellant's apartment from the weekend of September 22nd through September 24th. (7 R.R. 22). The video shows appellant pulling into the parking lot in his truck at 6:48

3

Saturday evening. (7 R.R. 23). Appellant entered the apartment at 6:57 p.m. (7 R.R. 23). At 8:44 p.m., appellant walks out of the apartment to the parking lot, and backs Warner's car into a spot underneath the carport. (7 R.R. 25-25). Appellant proceeded to make several trips back and forth from the apartment to the car, and eventually left in Warner's car at 9:28 on Saturday night. (7 R.R. 25; 15 R.R. SX 149). Appellant returned to the apartment complex on Monday, September 24th. (7 R.R. 26). At 3:21 a.m., appellant dragged a large container to the car. (7 R.R. 26-27). At 5:41 a.m., appellant made multiple trips to the car before leaving around 6:00 a.m. (7 R.R. 29-30).

In addition, the police recovered evidence from a dumpster in the alley behind appellant's parent's home in Odessa. Inside the dumpster, police found a Pampers box containing various items, including women's clothing, appellant's business cards, shredded pieces of a credit card which belonged to Warner, a pair of women's sunglasses, a pink handbag, feminine hygiene products, and a wad of black tape. (7 R.R. 83-93). The police also found legal documents bearing Warner's name in a black plastic container inside the Castellano's home in the bedroom where appellant was staying. (8 R.R. 30-31). A portable closet was also removed from appellant's bedroom which contained a white purse, a set of keys labeled "Michelle," miscellaneous cards bearing Warner's name, Warner's student ID card, and a credit card in Warner's name. (8 R.R. 31-32).

Appellant agreed to fly to Houston for a recorded, non-custodial interview. (6 R.R. 119). Before returning to Houston, appellant was interviewed by the producers of the "Dr. Phil" television show regarding Warner's disappearance. (6 R.R. 122-23; 7 R.R. 30-31). On September 30, 2012, appellant met with Fil Waters, a homicide detective with the Houston Police Department. (6 R.R. 128-29; 15 R.R. SX 7). Appellant initially maintained that he and Warner had gotten into an argument, that she had slammed the door to her bedroom, and that he had later discovered that she was gone. *Id.* However, appellant eventually admitted that the argument became violent. *Id.* Appellant said "I grabbed her by her neck and just threw her on the bed and I heard it pop and her tongue popped out and that was it. I sit there and held it and by the time I realized what I did, she was dead." *Id.* Appellant demonstrated for the police how Warner attempted to strike him and how he grabbed her around the neck. *Id.* Appellant said "I push her and then I grab her, and then about that time I'm facing the bed and then I fall on top of her and crush her windpipe." *Id.* Appellant admitted that he "just locked up," and held Warner's neck for at least a minute and a half or two minutes. *Id.* After killing Warner, appellant taped her feet together and placed a plastic bag over her head. *Id.* Then he hid her body in the closet and drove Cayden to Odessa. *Id.* When he returned to Houston, appellant put Warner's body in a large crate, dragged it down the stairs and loaded it in the car. *Id.* Appellant drove to a remote field south of Midland, Texas and buried the body in a shallow grave. *Id.*

After confessing to the police, appellant placed multiple phone calls to family members and friends and admitted that he had killed Warner. (8 R.R. 112; 15 R.R. SX 7). Appellant also called the producers of the "Dr. Phil" show and informed them that he had killed Warner. (5 R.R. 51-52; 7 R.R. 31-32).

Appellant drew a diagram directing police to the general location of Warner's body. (7 R.R. 72). In a rural area south of Midland, FBI agent Sherry Rice found a decomposing body partially covered in dirt. (8 R.R. 38, 53). The body was identified as Warner by fingerprint comparison. (8 R.R. 139).

The autopsy of Warner's body revealed that she sustained two fractures to her airway: a fracture of the hyoid bone and a fracture of the cricoid cartilage. (8 R.R. 161-65). Evidence of petechiae on the inner surfaces of her lips indicated that Warner died of asphyxiation. (8 R.R. 157-58). The medical examiner opined that the cause of the Warner's death was strangulation. (8 R.R. 169). Appellant was arrested and charged with murder. (7 R.R. 17).

## SUMMARY OF THE ARGUMENT

***Point of Error One:*** The evidence is legally sufficient to support the jury's rejection of appellant's claim that he was acting under the influence of sudden passion arising from an adequate cause. Even assuming that the jury believed appellant's statements that the complainant yelled at him and attempted to strike him, this provocation did not rise to the degree that would render an ordinary person incapable of cool reflection. Furthermore, the jury was entitled to disbelieve appellant's statements. Therefore, appellant failed to establish the issue of sudden passion as a matter of law.

***Point of Error Two:*** The trial court did not abuse its discretion in admitting extraneous offense testimony over appellant's objection that the State failed to provide timely notice pursuant to Rule of Evidence 404(b). Although the notice was only provided four days before trial, it was not unreasonable for the State to provide notice immediately upon discovering the extraneous offense evidence. Moreover, appellant had at least ten days of preparation before the extraneous offense testimony was presented to the jury. In addition, appellant has not demonstrated that the lack of notice negatively affected his defensive strategy.

***Point of Error Three:*** The trial court did not err in refusing to submit an instruction on the lesser included offense of criminally negligent homicide. There is no evidence in the record that appellant was unaware of the risk of death associated with strangling the complainant. Furthermore, appellant was not harmed by the lack

7

of an instruction on criminally negligent homicide because the jury received an instruction on the intervening lesser included offense of manslaughter, but chose to reject this option in favor of finding that appellant intentionally or knowingly caused the complainant's death.

**REPLY TO APPELLANT'S FIRST POINT OF ERROR**

In his first point of error, appellant contends that the evidence is legally sufficient to support a finding that he killed the complainant under the influence of sudden passion arising from an adequate cause.

*I.    Standard of review and applicable law.*

The issue of sudden passion may be raised by the defendant to mitigate the punishment for murder. *See* TEX. PENAL CODE ANN. § 19.02(d) (West 2013). The defendant bears the burden to prove by a preponderance of the evidence that the homicide occurred under the immediate influence of sudden passion arising from an adequate cause. *See id*; *Naasz v. State*, 974 S.W.2d 418, 420 (Tex. App.--Dallas 1998, pet. ref'd). "Sudden passion" means "passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation." TEX. PENAL CODE ANN. § 19.02(a)(2) (West 2013). An "adequate cause" is defined as a "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." *Id.* § 19.02(a)(1). "Neither ordinary anger nor fear alone raises an issue on sudden passion arising from adequate cause." *Moncivais v. State*, 425 S.W.3d 403, 407 (Tex. App.--Houston [1st Dist.] 2011, pet. ref'd).

In reviewing a challenge to the legal sufficiency of the evidence to support a factfinder's rejection of an issue that the defendant had the burden to prove, a civil

9

law standard is applied. *See Moncivais*, 425 S.W.3d at 407; *Cleveland v. State*, 177 S.W.3d 374, 386-87 (Tex. App.--Houston [1st Dist.] 2005, pet. ref'd). The defendant must overcome two obstacles. First, the reviewing court examines the record for evidence favorable to the jury's finding, ignoring all evidence to the contrary unless a reasonable factfinder could not. *See Matlock v. State*, 392 S.W.3d 662, 669 (Tex. Crim. App. 2013); *Cleveland*, 177 S.W.3d at 387. If there is no evidence supporting the finding, the reviewing court then examines the record to determine whether the defendant established, as a matter of law, that he killed the complainant while under the influence of sudden passion arising from an adequate cause. *Cleveland*, 177 S.W.3d at 387-89. In determining whether the defendant has established sudden passion as matter of law, the reviewing court does not consider evidence of sudden passion which is subject to a credibility assessment by the factfinder. *Id.* at 389. In most cases, the issue of sudden passion is resolved by the jury's assessment of the witness's credibility; therefore, a defendant would rarely be able to establish sudden passion as a matter of law. *Id.*[1]

II.    *The record contains evidence supporting the jury's rejection of the issue of sudden passion.*

In support of his claim that he was acting under the influence of sudden passion, appellant cites to statements made during his non-custodial confession to the

---

[1] This Court has previously acknowledged that a defendant can establish the issue of sudden passion as a matter of law only in "those rare instances in which the sudden passion issue can be determined from evidence that is not subject to a credibility determination by the jury as, for example, a stipulation of evidence by the parties." *Id.*

10

police.[2]  Appellant told Investigator Waters that he came home from work and got into an argument with Warner.  (15 R.R. SX 7).  Appellant stated that Warner called him "a sorry fucking pussy," and said that she would control him for the rest of his life.  *Id.*  According to appellant, Warner was screaming in his face and she attempted to strike him.  *Id.*  Appellant initially stated that grabbed her by the neck and threw her on the bed.  *Id.*  Appellant later stated that he grabbed her around the neck, they fell backwards onto the bed, he "twist[ed]," and then he heard a "pop."  *Id.*

Appellant also performed a visual demonstration of the altercation for Sergeant Brian Harris.  *Id.*  Appellant reenacted how he pushed Warner, grabbed her around the neck, and held her down on the bed.  *Id.*  Appellant stated that he "just locked up" and remained on top of Warner for at least a minute and a half or two minutes.  *Id.*  Appellant indicated that he heard a popping noise and then Warner's tongue stuck out.  *Id.*

The evidence is sufficient to support the jury's negative finding on the issue of sudden passion because appellant's confession reflects that he did not have adequate cause to strangle the complainant.  Even assuming that the jury believed appellant's claim that the complainant cursed at him and attempted to strike him, these actions do not provoke such a degree of anger, rage, resentment or terror that an ordinary

---

[2] Appellant also relies upon the testimony of defense witness John Laughlin that the complainant's physical injuries were consistent with the defensive theory that appellant fell on her and accidentally broke her neck.  *See* (Appellant's Brief pp. 9, 11).  However, this testimony has no bearing on whether appellant was acting under the influence of sudden passion arising from an adequate cause.

11

person would have been rendered incapable of cool reflection. *See McKinney v. State*, 179 S.W.3d 565, 570 (Tex. Crim. App. 2005) (holding that the victim's actions of shouting at the defendant and pushing the defendant did not rise to the level of adequate cause). Moreover, there is no evidence that the complainant was armed, or that appellant was injured.

In addition the record reflects that appellant had a prior history of violent behavior. Appellant told the police that he had previously gotten into a fight with the complainant, and he grabbed her by the neck, tackled her to the ground, and held her until she said she could not breathe. (15 R.R. SX 7). In addition, appellant's co-worker, Reynaldo Trinidad, testified that appellant told him about an incident in 2009 where he choked the complainant for eight seconds. (9 R.R. 113-15). Trinidad further testified about an unrelated incident where appellant attempted to run over the complainant with his car. (9 R.R. 116-19).

The jury also heard testimony from appellant's supervisor, Eric Johnson, that appellant threatened to kill Warner on two different occasions. (9 R.R. 156). First, appellant told Johnson that he was going to kill Warner so that his parents could take care of Cayden. (9 R.R. 156-57, 189-91). On another occasion, appellant came in to work yelling that Warner had physically assaulted him. (9 R.R. 158). Appellant said that he needed to find a pipe because he was going to kill her. (9 R.R. 159). The second threat occurred only a few months before the murder. (9 R.R. 159). In addition, Johnson testified that appellant had requested to take the week beginning

12

September 24th off from work to resolve Cayden's childcare situation. (9 R.R. 167-68).

Considering that appellant had previously expressed a desire to kill the complainant in order to take his son to live with his parents, that he had previously choked the complainant, and that he had arranged to take off from work immediately following the murder, a reasonable factfinder could have found that appellant anticipated his actions. "Anticipation of an event and preparation of a response indicates a defendant had time to deliberate over an action and did not act under the immediate influence of sudden passion." *Moncivais*, 425 S.W.3d at 407. As such, the evidence is sufficient to support the jury's rejection of appellant's claim that he was acting under the influence of sudden passion.

III. *Appellant did not establish the issue of sudden passion as a matter of law.*

Furthermore, the only evidence of sudden passion is the appellant's own statements. Moreover, appellant admitted that he had initially lied about the circumstances surrounding the complainant's death. As the sole judge of the credibility of the evidence, the jury was entitled to disbelieve appellant's version of events. *See Smith v. State*, 355 S.W.3d 138, 149 (Tex. App.--Houston [1st Dist.] 2011, pet. ref'd); *Bradshaw v. State*, 244 S.W.3d 490, 503 (Tex. App.--Texarkana 2007, pet. ref'd). Therefore, appellant has not established as a matter of law that he was acting under the influence of sudden passion. Accordingly, appellant's first point of error should be overruled.

13

## REPLY TO APPELLANT'S SECOND POINT OF ERROR

Appellant further argues that the trial court erred in admitting extraneous offense testimony from State's witness Eric Johnson that appellant had previously threatened to kill the complainant. Appellant's trial counsel objected that the State failed to provide timely notice of is intent to introduce the evidence in accordance with Rule of Evidence 404(b). (9 R.R. 140). The record reflects that defense counsel filed a request for notice on April 28, 2014. (C.R. 54-55). Voir dire commenced on May 20, 2014. (2 R.R. 1). The State provided notice of its intent to introduce Eric Johnson's testimony in a second amended notice filed on May 23, 2014. (C.R. 248-49). On May 27, 2014, the jury was sworn and the trial began. (5 R.R. 1). Eric Johnson testified about the extraneous threats on June 2, 2014. (9 R.R. 1, 141).

I.   *Standard of review and applicable law.*

Rule 404(b) provides that extraneous offense evidence may be admissible in certain circumstances "provided that upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence other than that arising in the same transaction." TEX. R. EVID. 404(b). The purpose of the notice requirement is to adequately apprise the defense of the extraneous offenses the State intends to introduce at trial and to prevent unfair prejudice resulting from the introduction of this evidence at trial. *Webb v. State*, 36 S.W.3d 164, 176, 178 (Tex. App.--Houston [14th Dist.] 2000, pet. ref'd). The trial court's determination of reasonableness is reviewed for an abuse of

14

discretion. *Sebalt v. State*, 28 S.W.3d 819, 822 (Tex. App.--Corpus Christi 2000, no pet.).

## II. *Service of request for notice.*

The State is only required to provide reasonable notice of its intent to introduce extraneous offense evidence upon timely request by the accused. *See* TEX. R. EVID. 404(b). A request for notice may be made by: (1) serving the State with a request for notice; or (2) filing a discovery motion requesting the court to order such notice and secure a ruling thereon. *See Espinosa v. State*, 853 S.W.2d 36, 39-40 (Tex. Crim. App. 1993) (Baird, J., concurring); *Henderson v. State*, 29 S.W.3d 616, 625 (Tex. App.--Houston [1st Dist.] 2000, pet. ref'd). In this case, appellant's counsel filed a written request for 404(b) notice.[3] A certificate of service on a written request for 404(b) notice creates a rebuttable presumption that the document was properly served. *Webb*, 36 S.W.3d at 177. Here, the request for 404(b) notice filed by appellant contains no certificate of service reflecting that the State received timely notice of the request. (C.R. 54-55). The record only reflects that the State filed an original notice of its intent to introduce extraneous offense evidence on May 8, 2014. (C.R. 57-59). Even assuming that the State received a timely request, the notice provided by the State was reasonable under the circumstances.

---

[3] The clerk's record does not contain a motion for discovery.

15

*III.* *The notice provided by the State was reasonable under the circumstances.*

Whether notice is considered "reasonable" depends upon the facts and circumstances of the case. *Webb*, 36 S.W.3d at 178. Notice provided at least ten days before trial is presumed to be reasonable. *Scott v. State*, 57 S.W.3d 476, 480 (Tex. App.--Waco 2001, pet. ref'd). Conversely, three days' notice over a weekend is generally considered to be presumptively unreasonable. *See Hernandez v. State*, 914 S.W.2d 226, 234 (Tex. App.--Waco 1996, no pet.) (holding that three-day notice given over the weekend was unreasonable when the request for notice had been on file for ten months);[4] *but see Sebalt*, 28 S.W.3d at 821-22 (noting that there is no authority for the proposition that notice given the Friday preceding a Monday trial is *per se* unreasonable);

In the instant case, four days' notice was provided over a weekend. However, there is no indication from the record that the State was attempting to ambush the defense with the extraneous offense evidence. According to the prosecutor, the State learned about appellant's extraneous threats to kill the complainant after speaking with appellant's boss, Charles Swihart. (9 R.R. 145-46). This conversation occurred on Friday, May 23, 2012, and notice was provided to the defense that same day. (9 R.R. 145-46).

---

[4] As noted *supra*, the record does not reveal the actual date that the State was served with the request for notice. Even assuming the State was served with the request on the same date it was filed, less than a month transpired before the State provided notice of its intent to introduce Eric Johnson's testimony.

Considering that the purpose of the notice requirement is to prevent unfair surprise to the defense, it was not unreasonable for the State to immediately provide notice upon discovery of the extraneous offense evidence. *See Owens v. State*, 119 S.W.3d 439, 444 (Tex. App.--Tyler 2003, no pet.) (holding that notice provided on the same day as jury selection was sufficient to prevent trial by ambush because notice was provided immediately after the extraneous offense evidence was discovered); *Henderson*, 29 S.W.3d at 625 (it was not unreasonable for the State to provide notice of its intent to introduce extraneous offense evidence eight days before the witness testified because notice was given as soon as the State learned of the extraneous offense evidence).

Moreover, no argument has been raised, either at trial or on appeal, that the lack of advance notice affected the defense's ability to cross-examine the witness about the extraneous threats. To the contrary, the record reflects that the witness was extensively cross-examined by defense counsel concerning the specifics of the extraneous threats made by appellant. *See generally* (9 R.R. 170-183). Lack of surprise is an important consideration is determining the reasonableness of the notice. *See Webb*, 36 S.W.3d at 178. In the instant case, the defense received notice of the extraneous offense evidence eleven days before the testimony was actually introduced. Therefore, the trial court did not abuse its discretion in finding that the notice provided by the State was reasonable for the purposes of Rule 404(b). *See, e.g., Owens*, 119 S.W.3d at 444 (emphasizing that the extraneous offense evidence was not

presented to the jury until ten days after the defense had received notice); *Self v. State*, 860 S.W.2d 261, 264 (Tex. App.--Fort Worth 1993, pet. ref'd) (holding that five days' advance notice was reasonable because the defense was able to cross-examine the witness about the extraneous offense, and the defense was not surprised by the extraneous offense testimony).

*IV.*    *Appellant was not harmed by the lack of notice.*

In assessing harm from a trial court's error in admitting extraneous offense evidence without reasonable notice, the reviewing court applies a Rule 44.2(b) analysis. *See Allen v. State*, 202 S.W.3d 364, 369 (Tex. App.--Fort Worth 2006, pet. ref'd); *Hernandez*, 176 S.W.3d at 825. Accordingly, any error in the trial court's admission of extraneous offense evidence must be disregarded unless if affected appellant's substantial rights. *See* TEX. R. APP. P. 44.2(b). In assessing whether the error had a substantial influence on the verdict, the reviewing court examines the record as a whole. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); *Allen*, 202 S.W.3d at 369.

The improper introduction of extraneous offense evidence is harmless unless: (1) it substantially influenced the jury's verdict; and (2) the defendant was surprised by the evidence. *Allen*, 202 S.W.3d at 369. "A defendant may demonstrate surprise by showing how his defense strategy might have been different had the State explicitly notified him that it intended to offer the extraneous-offense evidence." *Id.*

As noted previously, appellant does not contend that the lack of notice negatively affected the defense's cross-examination of the witness. Instead, appellant's general assertion of harm consists of a single sentence: "Had this been known, it surely would have been a different voir dire." (Appellant's Brief p. 13). Appellant fails to offer any explanation as to how the defensive strategy utilized during voir dire would have changed given prior notice of the State's intent to introduce testimony regarding appellant's prior threats to kill the complainant. Absent any meaningful argument from appellant demonstrating the prejudicial impact of the lack of notice, any error in the admission of the extraneous offense evidence is harmless.

## REPLY TO APPELLANT'S THIRD POINT OF ERROR

In his final point of error, appellant asserts that the trial court erred in refusing to submit a lesser included offense instruction on criminally negligent homicide. The record reflects that the trial court granted appellant's request to charge the jury on the lesser included offense of manslaughter, but denied appellant's request to charge the jury on the lesser included offense of criminally negligent homicide. (11 R.R. 14-16; C.R. 270).

I.   *There is no evidence that would permit the jury rationally to determine that appellant was guilty only of the lesser offense of criminally negligent homicide.*

An accused is entitled to a jury charge instruction on a lesser offense if: (1) the lesser offense is a lesser included offense under Article 37.09 of the Texas Code of Criminal Procedure; and (2) there is some evidence that would permit the jury

19

rationally to find that the defendant is guilty only of the lesser offense. *Stadt v. State*, 182 S.W.3d 360, 363 (Tex. Crim. App. 2005); *Rousseau v. State*, 855 S.W.2d 666, 672 (Tex. Crim. App. 1993). "The credibility of the evidence and whether it is controverted or conflicts with other evidence may not be considered in determining whether such a charge should be given." *Thomas v. State*, 699 S.W.2d 845, 849 (Tex. Crim. App. 1985).

Criminally negligent homicide is a lesser included offense of murder. *Thomas*, 699 S.W.2d at 847; *Jackson v. State*, 248 S.W.3d 369, 371 (Tex. App.--Houston [1st Dist.] 2007, pet. ref'd). A person commits criminally negligent homicide if he causes the death of an individual by criminal negligence. TEX. PENAL CODE ANN. § 19.05(a) (West 2013). Criminal negligence is defined as follows:

> A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

TEX. PENAL CODE ANN. § 6.03(d) (West 2013).

The fact that a defendant may not have intended the result does not necessarily mean he is entitled to a charge on criminal negligence. *Trujillo v. State*, 227 S.W.3d 164, 168 (Tex. App.--Houston [1st Dist.] 2006, pet. ref'd). "The key to criminal negligence is the failure of the actor to perceive the risk created by his conduct." *Jackson*, 248

20

S.W.3d at 371. The record must contain evidence reflecting that the defendant was unaware of the risk. *Id.* at 371-72.

Appellant contends that the trial court erred in refusing to submit an instruction on the lesser offense of criminally negligent homicide because there was evidence that he accidentally fell on the complainant, breaking her neck. *See* (Appellant's Brief p. 15). This evidence was introduced in the form of expert testimony from John Laughlin, a forensic engineer, that the complainant's injuries were consistent with appellant grabbing her neck, falling backwards over the bed, and bearing the force of his body weight down on her neck. (10 R.R. 79-80).

This evidence raises a defensive theory that the complainant's death was accidental; however, it does not support appellant's claim that the trial court should have submitted a jury instruction on criminally negligent homicide. The indictment charging appellant with murder alleges that he caused the complainant's death by "placing his hands around the complainant's neck and squeezing." (C.R. 31). In accordance with the indictment, the charge authorized the jury to convict appellant of murder if it found that he intentionally or knowingly caused the complainant's death by placing his hands around her neck and squeezing. (C.R. 268). The charge also permitted the jury to convict appellant of the lesser included offense of manslaughter if it determined that he recklessly caused the death of the complainant by placing his hands around her neck and squeezing. (C.R. 270). Similarly, appellant's proposed jury instruction would have allowed the jury to convict him of the lesser included offense

of criminally negligent homicide if it found that appellant negligently caused the complainant's death "by placing his hands around her neck and squeezing." (C.R. 265).

The fact that the defense presented some evidence supporting an alternate theory for the cause of the complainant's death has no bearing on whether appellant negligently squeezed the complainant's neck. In fact, the defense expert's testimony that there was no evidence of squeezing around the complainant's neck refutes, rather than supports, appellant's proposed instruction allowing the jury to find that he negligently strangled the complainant to death.[5] (10 R.R. 80).

Appellant does not cite to any other evidence supporting the proposed instruction, nor does the record contain any evidence reflecting that appellant was affirmatively unaware of the substantial and unjustifiable risk of death that could result from squeezing the complainant's neck. To the contrary, appellant's statements to police indicate that he grabbed the complainant's neck and choked her for at least a minute and a half or two minutes. (15 R.R. SX 7). The medical examiner testified that appellant's confession was consistent with the results of the autopsy. (8 R.R. 169). Moreover, appellant applied enough pressure to the complainant's neck to fracture her hyoid bone and cricoid cartilage.

---

[5] Even if the jury had believed the defensive theory of an accidental fall, it would not have been able to convict appellant of criminally negligent homicide under the language of appellant's proposed instruction; its only option would have been an acquittal.

In addition, the State presented testimony from appellant's co-worker that appellant had previously choked the complainant for eight seconds. (9 R.R. 114-15). Appellant also admitted to the police that he had previously grabbed the complainant by the neck, tackled her, and choked her until she said she could not breathe. (15 R.R. SX 7). Thus, the record reflects that appellant was aware of the risk of asphyxiation created by squeezing the complainant's neck. "It is common knowledge that people can die by strangulation, even inadvertently." *Juarez v. State*, 409 S.W.3d 156, 163 (Tex. App.--Houston [1st Dist.] 2013, pet. ref'd). As such, the evidence does not reflect that appellant failed to perceive the risk that his conduct could result in serious bodily injury or death.

II.  *Any error in the trial court's failure to submit a lesser included offense instruction on criminally negligent homicide was harmless.*

The failure to properly instruct the jury on a lesser included offense generally results in reversible error because the jury is denied an opportunity to convict the defendant of the lesser offense. *See Saunders v. State*, 913 S.W.2d 564, 571 (Tex. Crim. App. 1995); *Levan v. State*, 93 S.W.3d 581, 585 (Tex. App.--Eastland 2002, pet. ref'd). However, this error may be harmless if the jury is presented with the option of convicting the defendant of some other lesser included offense raised by the evidence and the jury declines to do so. *See Levan*, 93 S.W.3d at 586.

In this case, the jury was instructed on the lesser included offense of manslaughter. The culpable mental states for manslaughter and criminally negligent

23

homicide are similar; both involve a risk of death created by the defendant. *Id.* at 586. A defendant is guilty of manslaughter if he is aware of the risk created by his conduct, but consciously disregards that risk. *Id.* If the defendant is not aware of the risk created by his conduct, he is guilty of criminally negligent homicide. *Id.*

Here, the jury was presented with the option to convict appellant of the intervening lesser included offense of manslaughter if it found that he consciously disregarded the risk created by his conduct. The jury chose to reject this option in favor of finding that appellant intentionally and knowingly caused the complainant's death by placing his hands around her neck and squeezing. (C.R. 268). If the jury had concluded that the complainant's death was caused by a risk associated with appellant's conduct, rather than an intentional murder, it could have convicted appellant of the lesser included offense of manslaughter. Thus, appellant was not harmed by the trial court's failure to instruct the jury on criminally negligent homicide. *See Saunders*, 913 S.W.2d at 572 (reasoning that the trial court's failure to submit an instruction on a lesser included offense raised by the evidence may be harmless if the court submits an instruction on another lesser included offense also raised by the evidence because the jury's options are not limited to conviction of the greater offense or acquittal); *Levan*, 93 S.W.3d at 586-87 (holding that the omission of a lesser included instruction on criminally negligent homicide was harmless because the jury rejected the option to find the defendant guilty of the lesser included offense of manslaughter). Accordingly, appellant's third point of error should be overruled.

24

## CONCLUSION AND PRAYER

It is respectfully submitted that all things are regular and the conviction should be affirmed.

**DEVON ANDERSON**
District Attorney
Harris County, Texas


/s/ Heather A. Hudson
**HEATHER A. HUDSON**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas  77002
(713) 755-5826
State Bar No. 24058991
hudson_heather@dao.hctx.net
curry_alan@dao.hctx.net


## CERTIFICATE OF COMPLIANCE

The undersigned attorney certifies that this computer-generated document has a word count of 6,060 words, based upon the representation provided by the word processing program that was used to create the document.

/s/ Heather A. Hudson
**HEATHER A. HUDSON**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas  77002
(713) 755-5826
State Bar No. 24058991

25

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing instrument has been submitted for service by e-filing to the following address:

Jani Maselli Wood
Assistant Public Defender
1201 Franklin, 13th Floor
Houston, Texas 77002
Tel: (713) 368-0016
Fax: (713) 368-9278
Jani.Maselli@pdo.hctx.net

/s/ Heather A. Hudson
**HEATHER A. HUDSON**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas 77002
(713) 755-5826
State Bar No. 24058991

Date: 3/31/2015

26