

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-17-00036-CR

Lars Erik **ITZO**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 187th Judicial District Court, Bexar County, Texas
Trial Court No. 2016CR2163
Honorable Steve Hilbig, Judge Presiding

Opinion by:  Irene Rios, Justice

Sitting:  Patricia O. Alvarez, Justice
Luz Elena D. Chapa, Justice
Irene Rios, Justice

Delivered and Filed:  February 28, 2018

AFFIRMED

A jury convicted Lars Itzo of the offense of manslaughter in the shooting death of his wife,
Debora Kelly, which occurred on October 10, 2015.  Based on the jury's recommendation, the trial
court sentenced Itzo to fifteen years' imprisonment.  On appeal, Itzo raises five issues in which he
complains of jury charge error, improper admission of evidence, improper trial court commentary,
and ineffective assistance of counsel.  The judgment of the trial court is affirmed.

## BACKGROUND

Lars Itzo testified that at approximately 4:00 a.m. on October 10, 2015, strange noises woke him. Itzo maintained he believed an intruder was in the house; he got out of bed and went to his living room where he heard a creaking noise and saw a flash of light. Itzo testified he thought he heard two voices. Itzo went back to his bedroom to retrieve the shotgun he kept on his side of his bed. Itzo cocked the shotgun and went back into the hallway, where he saw a movement. Itzo pulled the shotgun's trigger, shooting toward the movement and then attempted to reload. Itzo testified it was taking too long to reload, so he went back to the bedroom to get a loaded handgun. According to Itzo, he heard moaning coming from the hallway when he was in the bedroom and he knew the moaning came from Kelly. Itzo called 9-1-1, and emergency personnel responded but Kelly did not survive the gunshot wound.

Following an investigation, the State charged Itzo in a two-count indictment with the offenses of felony murder and manslaughter. The trial jury acquitted Itzo of felony murder, but found him guilty of the offense of manslaughter. Based upon the jury's recommendation, the trial court sentenced Itzo to fifteen years' imprisonment. Itzo filed a motion for new trial, but the trial court did not grant a hearing on the motion.

This appeal followed.

## ANALYSIS

### Jury Charge Error

In his first two issues on appeal, Itzo complains the trial court improperly included Kelly's name in the justification defense portion of the jury charge and that the trial court erred by denying his requested instruction on the lesser included offense of criminally negligent homicide.

***Standard of Review***

We review alleged jury-charge error in two steps: first, we determine whether error exists; if so, we then evaluate whether sufficient harm resulted from the error to require reversal. *Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)); *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005); *see also Villareal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015). "Under *Almanza*, the degree of harm required for reversal depends on whether error was preserved in the trial court." *Villareal*, 453 S.W.3d at 433. Error properly preserved by objection will require reversal provided the defendant suffered "some harm." *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013); *Ngo*, 175 S.W.3d at 743. On the other hand, error not properly preserved by objection must be "fundamental," and reversal is required only if the defendant suffered egregious harm. *Reeves*, 420 S.W.3d at 816; *Ngo*, 175 S.W.3d at 743–44. Egregious harm results from error that affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Arteaga v. State*, 521 S.W.3d 329, 338 (Tex. Crim. App. 2017); *Villareal*, 453 S.W.3d at 433.

### Inclusion of Complainant's Name in the Justified Defense Instructions

Itzo contends the trial court erred when it identified Kelly by name in the justified defense instructions (defense of self, third-persons, and property) in the Charge of the Court. Itzo bases the reasoning for his argument on a note sent out by the jury during deliberations. The jury sent out the following note:

> The narrative of the indictment reads to us that Debora Ann Kelly was the assailant in the case which implies [Itzo] knew who she was. We need a clarification on pages 14–15 please.

According to Itzo, "[t]he jury understandably took this to mean [Itzo] recognized the person he shot at the time."

*Preservation*

To preserve a complaint for appellate review, the complaining party must make a timely objection to the trial court which states the grounds with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds are apparent from the context. TEX. R. APP. P. 33.1(a)(1). The complaining party must let the trial court know what he wants and why he thinks he is entitled to it, and he must do so clearly enough for the trial court to understand and at a time when the trial court is in a position to do something about it. *Bekendam v. State*, 441 S.W.3d 295, 300 (Tex. Crim. App. 2014).

There are, however, two "narrow exceptions" to these preservation requirements. *Grado v. State*, 445 S.W.3d 736, 739–41 (Tex. Crim. App. 2014) (explaining that even constitutional rights are subject to preservation requirements and that "evidentiary or procedurally based" rights are generally subject to preservation requirements). Neither absolute requirements nor waivable-only rights may be forfeited by a party's inaction in the trial court. *See Smith v. State*, 463 S.W.3d 890, 895-96 (Tex. Crim. App. 2015); *Grado*, 445 S.W.3d at 739. Absolute requirements include jurisdiction of the person and jurisdiction of the subject matter. *Aldrich v. State*, 104 S.W.3d 890, 895 (Tex. Crim. App. 2003). Waivable-only rights include "the rights to the assistance of counsel, the right to trial by jury, and a right of appointed counsel to have ten days of trial preparation which a statute specifically made waivable-only." *Id*.

Itzo acknowledges "counsel did not specifically object to the inclusion of Debora Anne Kelly's name in the defensive instructions." Rather, counsel objected that the trial court's instructions regarding the defenses of self, third persons, and property were confusing.

> [Trial Counsel:] … I am having a very difficult time understanding what I'm reading, and I think a jury is going to be confused as well.
> …
> [Trial Counsel:] My objection, Your Honor, is that I think the charge is convoluted. I think it's hard to understand.

The trial court denied counsel's objection, and when counsel asked the trial court, "Is there a way that I can clarify my objection to the Court?", the trial court responded, "Counsel, your objection is overruled."

Itzo did not make a specific objection at a time when the trial court was in a position to correct the alleged error. Further, this issue does not fall within the exceptions to preservation requirements. Itzo did not preserve this complaint of jury charge error. Reversal is required only if the error, if any, was "fundamental" in that it was "egregious and created such harm that the defendant was deprived of a fair and impartial trial." *See Villareal*, 453 S.W.3d at 433; *Almanza*, 686 S.W.2d at 171.

Therefore, we first examine whether error occurred.

### *Did the trial court err by including Kelly's name in the justification defense instructions?*

A trial court is statutorily obligated to instruct the jury on the "law applicable to the case." *See* TEX. CODE CRIM. PROC. art. 36.14; *Arteaga*, 521 S.W.3d at 334. The court's duty to instruct the jury on the "law applicable to the case" exists even when defense counsel fails to object to inclusions or exclusions in the charge. *Vega v. State*, 394 S.W.3d 514, 519 (Tex. Crim. App. 2013); *Taylor v. State*, 332 S.W.3d 483, 486 (Tex. Crim. App. 2011). The trial court is "ultimately responsible for the accuracy of the jury charge and accompanying instructions." *Vega*, 394 S.W.3d at 518 (quoting *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007)); *Taylor*, 332 S.W.3d at 488.

According to his brief, Itzo's defensive theory at trial was that "he had an understandable but mistaken belief that the person whose outline he saw in the darkened hall was an intruder in his home, justifying the use of deadly force to defend himself, his wife, and his home." Itzo reasons the trial court's inclusion of Kelly's name in the justified defense instructions amounts to an

improper comment on the weight of the evidence because the question at trial was whether Itzo knew he was shooting at Kelly rather than at an unknown intruder.

Itzo accurately points out that a charge that assumes the truth of a controverted issue is a comment on the weight of the evidence and is erroneous. *See Whaley v. State*, 717 S.W.2d 26, 32 (Tex. Crim. App. 1986); *Wilson v. State*, 419 S.W.3d 582, 595 (Tex. App.—San Antonio 2013, no pet.). However, in this case, Kelly's identity, or rather the undisputed fact that Kelly is the person shot by Itzo, is not controverted. The controverted issue is Itzo's belief he was shooting at an unknown intruder. Therefore, the inclusion of Kelly's name as the person against who Itzo was claiming a defense is not assuming the truth of a controverted issue and is not a comment on the weight of the evidence.

Accordingly, we conclude the trial court did not err by including Kelly's name in the justified defense instructions. Because we find no error, we need not address the issue of harm.

Issue one is overruled.

### Lesser Included Offense Instruction

Itzo contends the trial court erred by refusing to include his requested jury instruction on the lesser included offense of criminally negligent homicide. As Itzo requested a lesser included offense instruction, this issue is preserved. Therefore, we first address whether error occurred.

In determining whether error occurred, we engage in a two-step lesser-included-offense analysis. *Hall v. State*, 225 S.W.3d 524, 528 (Tex. Crim. App. 2007). First, we compare the elements and the facts of the offense alleged in the indictment with the elements of the potential lesser-included offense to determine whether the lesser-included offense is included within the proof necessary to establish the charged offense. *Id*. at 531, 535. This question is a matter of law, and is not dependent on the evidence to be produced at trial. *Id*. at 535; *Rice v. State*, 333 S.W.3d 140, 144 (Tex. Crim. App. 2011) (this question of law is reviewed de novo). The second step of

the analysis requires us to determine whether there is some evidence in the record that would permit a rational jury to find that, if the defendant is guilty, he is guilty only of the lesser-included offense. *Hall*, 225 S.W.3d at 536. "The evidence must establish the lesser-included offense as 'a valid, rational alternative to the charged offense.'" *Rice*, 333 S.W.3d at 145 (quoting *Hall*, 225 S.W.3d at 536).

"An offense is a lesser-included offense if … it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission." TEX. CODE CRIM. PROC. ANN. art. 37.09(3).

The culpable mental states required for manslaughter and criminally negligent homicide are similar—each requiring assumption of a risk. *Levan v. State*, 93 S.W.3d 581, 586 (Tex. App.—Eastland 2002, pet. ref'd) (citing *Thomas v. State*, 699 S.W.2d 845, 849 (Tex. Crim. App. 1985)). The difference between criminally negligent homicide and manslaughter is the culpable mental state of criminal negligence for the former and recklessness for the latter. *See Thomas v. State*, 699 S.W.2d 845, 849 (Tex. Crim. App. 1985).

A person commits the offense of manslaughter "if he recklessly causes the death of an individual." TEX. PENAL CODE ANN. § 19.04(a). "If the defendant is aware of the risk his conduct creates but consciously disregards it, his conduct is reckless and, therefore, constitutes manslaughter." *Levan*, 93 S.W.3d at 586; TEX. PENAL CODE ANN. § 6.03(c). A person commits the offense of criminally negligent homicide "if he causes the death of an individual by criminal negligence." *Id.* § 19.05(a). "If the defendant is not aware of the risk his conduct creates, he is criminally negligent if he should have been aware of the risk his conduct created." *Levan*, 93 S.W.3d at 586; TEX. PENAL CODE ANN. § 6.03(d). For both recklessness and criminal negligence, the risk involved must be of such a nature and degree that its disregard in the case of recklessness, or the failure to perceive it in the case of criminal negligence, constitutes "a gross deviation from

the standard of care that an ordinary person would exercise under all the circumstances" as viewed from the defendant's point of view. TEX. PENAL CODE ANN. §§ 6.03(c), (d). "Thus, criminally negligent homicide is a lesser included offense of manslaughter, because the two offenses differ only in that criminally negligent homicide requires a less culpable mental state." *Stadt v. State*, 182 S.W.3d 360, 364 (Tex. Crim. App. 2005); *see Hall*, 225 S.W.3d at 531, 535.

Therefore, we consider whether some evidence exists that appellant was guilty only of criminally negligent homicide. The key to criminal negligence is the failure of the actor to perceive the risk created by his conduct. *See Still v. State*, 709 S.W.2d 658, 660 (Tex. Crim. App. 1986); *Wong v. State*, 745 S.W.2d 563, 565 (Tex. App.—Waco 1988, no pet.). If the evidence shows that the defendant perceived the risk his conduct created, he is not entitled to a charge of criminally negligent homicide. *Id.* at 850. "Evidence that a defendant knows a gun is loaded, that he is familiar with guns and their potential for injury, and that he points a gun at another indicates a person who is aware of a risk created by that conduct and disregards the risk." *Id*. Such a person is "at least reckless." *Id*.

> In his brief, Itzo argues:
>
> While cases are legion that a defendant is generally not entitled to a charge of negligent homicide when the evidence shows he has familiarity with weapons and exhibits a loaded weapon, the issue is the combination of the elements of the offense with the elements of the affirmative defense of self, third persons, and property, and the circumstances of waking up in the middle of the night to a darkened house and strange noises.
>
> The evidence, while contested, did include evidence that [Itzo] was disoriented upon waking, unable to discern that his wife was no longer in the bed, and thus not entirely aware of his surroundings. Witnesses testified it is reckless conduct to shoot at an unidentified target; however, that must be examined in the context of evidence that [Itzo] was operating under circumstances during which an ordinary person might not have actual awareness of the risk he disregarded.

The record does not show Itzo failed to perceive the risk created by his conduct of brandishing a loaded gun. Therefore, having considered the record, we do not find "some

evidence" showing Itzo was guilty only of criminally negligent homicide. Accordingly, we conclude the trial court did not err by denying the requested lesser included offense instruction on criminally negligent homicide.

## Ineffective Assistance of Counsel

Itzo alleges counsel was ineffective for failing to timely and specifically object to charge error and by failing to request a curative instruction after the jury sent out the jury note asking for further clarification.

### *Standard of Review*

To prevail on an ineffective-assistance-of-counsel claim, an appellant must prove, by a preponderance of the evidence that (1) counsel's performance was deficient, i.e., counsel's assistance fell below an objective standard of reasonableness, and (2) he was prejudiced by counsel's deficient performance, i.e., a reasonable probability exists that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013).

When evaluating counsel's effectiveness, we look to the totality of the representation and the particular circumstances of each case. *Thompson*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689. Accordingly, we indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Thompson*, 9 S.W.3d at 813. Therefore, Itzo "'must overcome the presumption that, under the circumstances, the challenged

action might be considered sound trial strategy.'" *Ex parte Moore*, 395 S.W.3d 152, 157 (Tex. Crim. App. 2013) (quoting *Strickland*, 466 U.S. at 689).

"A substantial risk of failure accompanies an appellant's claim of ineffective assistance of counsel on direct appeal." *Thompson*, 9 S.W.3d at 813. "[A]llegations of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Id*. at 814. In this case, although Itzo filed a motion for new trial, the trial court did not hold a hearing at which a record on trial counsel's strategy could be developed. Therefore, we are faced with a silent record.

In the absence of a developed record, we will not speculate as to the reasons trial counsel acted as he did. *Rodriguez v. State*, 336 S.W.3d 294, 302 (Tex. App.—San Antonio 2010, no pet.). Rather, we presume the actions were taken as part of a strategic plan for representing the client. *Id*. Moreover, "an appellate court should not find deficient performance unless the challenged conduct was 'so outrageous that no competent attorney would have engaged in it.'" *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).

The prejudice prong of *Strickland* requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial, i.e., a trial with a reliable result. *Strickland*, 466 U.S. at 687. In other words, an appellant must show there is a reasonable probability that, without the deficient performance, the result of the proceeding would have been different. *Id*. at 694; *Nava*, 415 S.W.3d at 308. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694; *Nava*, 415 S.W.3d at 308. The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding in which the result is being challenged. *Strickland*, 466 U.S. at 697. Failure to make the required showing of either deficient

performance or prejudice defeats an appellant's ineffectiveness claim. *Thompson*, 9 S.W.3d at 813.

### *Discussion*

Itzo contends that if we determine the objection counsel made to the entirety of the jury instructions regarding defense of self, third persons, and property as convoluted was insufficient to preserve a complaint on appeal, counsel's performance was below the standard of care and could not be considered trial strategy. When claiming ineffective assistance for failing to object, an appellant must demonstrate that if trial counsel had objected, the trial court would have committed error by overruling the objection. *Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011).

Itzo additionally contends counsel should have requested a supplemental jury instruction that the original instructions were not a comment on the evidence and were not intended to imply Itzo recognized or failed to recognize Kelly.

During deliberations, the jury sent out a note, which stated:

> The narrative of the indictment reads to us that Debora Ann Kelly was the assailant in the case which implies [Itzo] knew who she was. We need a clarification on pages 14–15 please.

The trial court replied:

> The Court must instruct you that you have received all the instructions that the Court can provide. You are to continue your deliberations under the instructions provided in the Court's charge.

Neither party objected to the trial court's response.

We have already concluded the inclusion of Kelly's name in the justification defenses portion of the jury charge was not error. Itzo offers no argument regarding whether trial counsel had objected to the inclusion of Kelly's name in the justification defense prior to submission of the court's charge to the jury, the trial court would have erred by overruling the objection. *See id.*

Nor has Itzo shown the trial court would have erred by refusing to provide a curative instruction had one been requested. *See id*.

Accordingly, we conclude Itzo has failed to show trial counsel rendered ineffective assistance of counsel by failing to object to the inclusion of Kelly's name in the justification defenses portion of the jury charge or by not requesting a curative instruction to the jury's note.

Issue three is overruled.

### Admission of Lay Witness Testimony

Itzo contends that the trial court erred by admitting over objection lay witness testimony from Detective Tom McNelly that Itzo's tears did not seem genuine and that Detective McNelly did not think Itzo's distress was genuine.[1] On appeal, Itzo argues Detective McNelly's testimony should have been excluded because the testimony involved Itzo's state of mind.

### *Standard of Review and Preservation*

The admissibility of evidence is within the discretion of the trial court and will not be reversed absent an abuse of discretion. *See Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001).

"As a prerequisite to presenting a complaint for appellate review, the record must show that: (1) the complaint was made to the trial court by a timely request, objection, or motion ...." TEX. R. APP. P. 33.1(a)(1). "In addition, a party must object each time the inadmissible evidence is offered or obtain a running objection." *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App.

---

[1] Itzo states he "timely objected to the State's questions to multiple witnesses regarding whether it appeared [Itzo] was faking remorse." The State additionally points out that two police officers testified Itzo's remorse appeared feigned. However, in his brief, he addresses the testimony of only one witness, Detective McNelly. Therefore, to the extent Itzo actually intends to raise complaints regarding witnesses other than Detective McNelly, the specific complaints regarding testimony of those witnesses is not briefed and is waived.

2003). "An error in the admission of evidence is cured where the same evidence comes in elsewhere without objection." *Id.*

### *Discussion*

During his testimony, Detective McNelly testified as follows in response to the State's questioning:

| [The State:] | And what was his demeanor generally while he was speaking to you? |
|---|---|
| [McNelly:] | He — he attempted to cry several times. |
| [The State:] | I'm sorry. You said he — |
| [McNelly:] | He — he would try to cry several times when he was there speaking with me. *I didn't find it very genuine, though.* |
| [The State:] | Okay. |
| [McNelly:] | But — |
| [The State:] | So, let's back up and talk about that. What do you mean he tried to cry? Like what — |
| [McNelly:] | He made the noises as if he was trying to cry. |
| [The State:] | Okay. |
| [McNelly:] | And as I sat across from him, it just didn't seem very genuine. |
| [Defense:] | Judge, I'm going to object to that based on speculation. |

(emphasis included).

The record shows Itzo did not object the first time Detective McNelly testified he did not find Itzo's behavior during their interview genuine. Further, the record shows Detective Robert Bunnell later testified without objection that Itzo's emotions appeared forced and Itzo seemed to be trying to sob in front of him, but did not actually cry.

Any possible error in the trial court's decision to overrule Itzo's objection to Detective McNelly's testimony was overcome by Detective McNelly's previous unobjected-to testimony that he believed Itzo's behavior was not genuine, as well as Detective Bunnell's testimony that Itzo's emotions appeared forced. *See id.*

Issue four is overruled.

## Trial Court's Commentary and Conduct

Itzo contends that when the trial court stepped outside its role as arbiter by conducting an examination of a witness in front of the jury, the impartiality of the jury was vitiated and Itzo was denied a fundamentally fair trial.[2] Acknowledging no objection was made, Itzo asserts error was not waived because the comments amounted to structural error. Based on this assertion, Itzo argues he was not required to object to preserve his complaint for appeal.

### *Preservation and Standard of Review*

In November 2017, the Court of Criminal Appeals decided the case, *Proenza v. State*, a case that discussed preservation of complaints regarding a trial court's comments. *Proenza v. State*, PD-1100-15, 2017 WL 5483135 (Tex. Crim. App. Nov. 15, 2017). In *Proenza*, the State called Dr. Grannum to testify regarding prior treatment of a child, as well as to Su Clinica's "supposed requirement that a child be accompanied by a documented legal guardian to receive care."

> After both parties completed their questioning of Dr. Grannum and asked that she be excused, the trial judge interjected by directly asking Dr. Grannum for further details regarding the day-to-day enforcement of Su Clinica's policy. Proenza did not object to this initial exchange between the trial judge and Dr. Grannum, instead opting to "clarify" the testimony brought out by the judge by further examining the witness. But this only prompted the judge to interject yet again, this time expressing skepticism that Su Clinica's policy was enforced as stringently as defense counsel's follow-up questions suggested. In the course of this judicial witness examination, the trial judge informed Dr. Grannum, in the presence of the jury, that her own doctor allowed the judge's children to be accompanied by relatives without any sort of authorizing note.
>
> As to the entirety of this exchange between the trial judge and Dr. Grannum, the State concedes, and we agree, that "[t]he court's tone is fairly characterized as

---

[2] Itzo also includes a complaint that the trial court refused to allow defense counsel to clarify the objections to the jury charge after "making the disdainful comment that he overruled the objections 'whatever they are.'" Itzo contends the trial court's conduct "grossly affected the jury's ability to decide the dispositive issue of whether [Itzo] had a justified fear of an intruder in his home." This is a multifarious claim for which Itzo offers no supporting authority, and, thus, we need not address the claim. *See Jenkins v. State*, 493 S.W.3d 583, 624 n.50, 85 (Tex. Crim. App. 2016); *Mays v. State*, 318 S.W.3d 368, 390 n.82 (Tex. Crim. App. 2010).

> disapproval of the wisdom of such a practice and/or doubt that the policy is enforced as strictly as suggested by [Dr.] Grannum."

*Id*. at *1–2 (internal citations omitted).

The Court of Criminal Appeals ultimately found Proenza had not 'forfeited' his objection by mere inaction. *Id*. at *10. The Court of Criminal Appeals also recognized that not "every unscripted judicial comment in fact disrupts the proper functioning of the judicial system or weakens the public's faith in our trial judges." *Id*. at *9. After holding the applicable harm analysis to be employed was that under Rule 44.2(b), the Court of Criminal Appeals remanded the case to the Court of Appeals to revisit its harm analysis. *Id*. at *10

Texas Rule of Appellate Procedure 44.2 (b) addresses nonconstitutional error and provides: "Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." In other words, nonconstitutional error requires reversal only if it affects the substantial rights of the accused. *Id*.; *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011). We will not overturn a criminal conviction for nonconstitutional error if, after examining the record as a whole, we have fair assurance the error did not influence the jury, or influenced the jury only slightly. *Barshaw*, 342 S.W.3d at 93.

In assessing potential harm, our focus is not on whether the outcome of the trial was proper despite the error, but on whether the error had a substantial or injurious effect or influence on the jury's verdict. *Barshaw*, 342 S.W.3d at 93–94. We review the entire record to ascertain the effect or influence on the verdict of the wrongfully admitted evidence. *Id*. at 93; *see Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010) (in conducting harm analysis "we examine the entire trial record and calculate, as much as possible, the probable impact of the error upon the rest of the evidence"). We consider all the evidence that was admitted at trial, the nature of the evidence supporting the verdict, the character of the alleged error, and how the alleged error might be

considered in connection with other evidence in the case. *Barshaw*, 342 S.W.3d at 94. We also may consider the jury instructions, the parties' theories of the case, closing arguments, voir dire, and whether the State emphasized the error. *Id.*; *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000).

We must reverse a conviction for nonconstitutional error if we have "grave doubt" about whether the result of the trial was free from the substantial influence of the error. *Barshaw*, 342 S.W.3d at 94. "'Grave doubt' means that 'in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error.'" *Id.* (quoting *Burnett v. State*, 88 S.W.3d 633, 637–38 (Tex. Crim. App. 2002)). "[I]n cases of grave doubt as to harmlessness the [appellant] must win." *Id.*

### *Discussion*

During re-direct examination of the medical examiner Dr. William McClain, the State asked Dr. McClain if discharging a firearm is an action that is done "with consciously pulling one's finger on the trigger." Defense counsel objected, and the following exchange occurred:

[Counsel]: Objection, Judge; I think that's outside the scope of his expertise. It's also leading.
[Court]: Do you know how someone would shoot a gun?
[McClain]: I do, yes, sir.
[Court]: How would they shoot a gun?
[McClain]: By pulling the trigger, most commonly with their finger.
[Court]: All right. Ask your next question.

Itzo argues this exchange, although short, addressed an important issue in the case: whether a weapon can be discharged by someone under circumstances that the discharge is not the result of a conscious disregard of risks. Itzo also argues the exchange led Dr. McClain through an explanation of how a weapon is shot in such a way as to imply the action could only be accomplished through a conscious decision.

Assuming, without deciding, that the trial court's questioning of Dr. McClain was improper, the trial court's conduct was not harmful. The issue of whether Itzo fired the shotgun was not contested during trial. Rather, the State alleged Itzo intentionally or knowingly caused Kelly's death, while Itzo challenged the State's theory by arguing he believed he was shooting at an intruder. Nevertheless, Itzo's own testimony and other evidence established Itzo fired the shotgun by pulling the trigger. Further, that testimony established a conscious decision to fire the shotgun, pull the trigger, to shoot.

On several occasions during his testimony, Itzo testified he "pulled the trigger," shot his wife, or intentionally shot at what he says he believed was an intruder. Itzo testified: "I had seen the movement in front of me, and I had pulled the trigger at that time." Also, Itzo responded, "Absolutely" to trial counsel's question, "Okay. Let's go back to October 10th, last year. Did you mistakenly shoot your wife?" Additionally, Itzo answered affirmatively when the State asked, "This figure you say you saw, you intended to shoot and stop that figure, correct?"

Upon reviewing the entire trial record to determine the effect or influence of the trial court's comments on the verdict, there exists no "grave doubt" about whether the result of the trial was free from substantial error, if any. *See Barshaw*, 342 S.W.3d at 94. The subject of the brief questioning by the trial court touched on a subject that is common knowledge — how one shoots a gun. This coupled with Itzo's own testimony that he fired the shotgun, as well as other trial testimony that Itzo was familiar with firearms, we have fair assurance that the brief questioning of Dr. McClain by the trial court did not influence the jury, or influenced the jury only slightly. Thus, because the error, if any, did not have a substantial and injurious effect or influence in determining the verdict, it did not affect Itzo's substantial rights. Accordingly, the trial court's error, if any, was harmless.

Issue five is overruled.

## CONCLUSION

Based on the foregoing reasons, the trial court's judgment is affirmed.

Irene Rios, Justice

DO NOT PUBLISH