# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-21-00416-CR

**Alvin Dejuan Melton, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE 20TH DISTRICT COURT OF MILAM COUNTY
### NO. CR25,897, THE HONORABLE JOHN YOUNGBLOOD, JUDGE PRESIDING

## O P I N I O N

Alvin Dejuan Melton was convicted of murder and was sentenced to twenty-five years' imprisonment. *See* Tex. Penal Code §§ 12.32, 19.02. In three issues on appeal, Melton contends that the trial court erred by denying his requests for jury instructions on criminally negligent homicide and self-defense and that his trial counsel was ineffective for failing to object to a portion of the State's closing argument during the punishment phase. We will affirm the trial court's judgment of conviction.

## BACKGROUND

In September 2017, the police responded to a 911 call reporting that someone had been shot at the home owned by Melton, and when the police arrived, they found Courtney Latrell Williams deceased on the porch with a gunshot wound to his head. At that time, Melton

was at his parents' house next door, but he returned to his home after the police arrived. Melton's mother also handed over a shotgun to the police.

Melton agreed to talk with two police officers about what happened at the scene, and the officers recorded those exchanges. In those recordings, which were later introduced at trial, Melton explained that he was socializing outside of his house with several friends and family members, including Williams, Quentel Westbrook, and Melton's brother John Melton. At some point during the gathering, John and Westbrook got into an altercation, and Melton and Williams separated the two individuals. According to Melton, John got angry at him, displayed a knife, and held it against him. Melton described feeling threatened by John's actions. In response, Melton went inside his house, retrieved his shotgun, returned to the group, and told John to never pull a knife on him again. Melton explained that after he retrieved the gun, it went off in a "freak accident," shooting Williams. Melton stated that he did not intend to shoot anyone, that he did not touch the trigger, and that he did not load the weapon. After Williams was shot, Melton went next door to his parents' home with the shotgun, and one of the other individuals at the home called 911.

Melton was indicted for the offense of murder. During the trial, the State called several witnesses, including the detective who interviewed Melton at the scene, one of the police officers responding to the 911 call who described the scene and Williams's wounds as being inconsistent with Melton's version of the events, the medical examiner who performed an autopsy and concluded that Williams died from a wound to the head caused by a shotgun discharged approximately five feet away from him, the officer who obtained a positive result in a gunshot-residue test performed on Melton, and the sheriff who examined the shotgun and testified that the weapon functioned as it was designed to do, that the trigger had to be squeezed

2

with considerable force to discharge the weapon, and that he was unable to get the weapon to misfire as described by Melton. At trial, the following evidence was admitted: the two recorded interviews of Melton made by officers at the scene, a recorded interview of another person who was at the home at the time of the incident, photographs of the home and of Williams, and the autopsy report.

Melton elected to testify and also called John as a witness. In his testimony, Melton repeated his assertion that the shotgun discharged without his touching the trigger, that the shooting was accidental, and that he did not intend to shoot anyone. Melton also testified that he had a reasonable fear that John might hurt or kill him because John has multiple convictions for violent offenses, pulled a knife on him, and is quick to anger. Additionally, Melton related that he did not check to see if the shotgun was loaded and that he did not think it was loaded. Further, Melton stated that the gun was not pointed in any direction, was not pointed up or down, was on his side, and was parallel to the ground. Melton's brother John also testified that the shooting was accidental.

The jury charge for the guilt-innocence phase included instructions for murder and for manslaughter. Melton also requested an instruction on criminally negligent homicide and on self-defense, but the trial court denied those requests. After considering the evidence presented at trial, the jury found Melton guilty of murder.

During the punishment phase, the State called the following witnesses: Williams's sister, his mother, and the sheriff who previously testified. Melton elected to testify during the punishment phase, and he called the following witnesses: his mother, his girlfriend, and two of his brothers. After both sides rested, the trial court read to the jury the charge for the punishment phase, including the required instructions pertaining to parole law and good-conduct time.

3

During his closing argument, Melton's attorney asked the jury to return a fair and impartial sentence taking into account mitigating evidence, emphasized that Melton apologized to Williams's family during his testimony and accepted responsibility, and informed the jury that Melton has three children for whom he is responsible. In its closing, the State argued that Williams did nothing wrong, that his family will never see him again, that Melton could have killed anyone at the house through his behavior, that Melton and his brother have been violent with one another before, and that Melton tried to cover up the crime and had not told the truth about everything that happened. The State also made a reference to parole law and good-conduct time. After considering the evidence presented during the punishment phase, the jury sentenced Melton to twenty-five years' imprisonment.

Melton appeals the trial court's judgment of conviction.

## DISCUSSION

In his first two issues on appeal, Melton argues that the trial court erred by denying his request for jury instructions on criminally negligent homicide and self-defense. In his third issue on appeal, Melton contends that his trial attorney provided ineffective assistance during the punishment phase by failing to object to a portion of the State's closing argument discussing parole law and good-conduct time.

### Criminally Negligent Homicide

When presenting his first issue, Melton asserts that the evidence presented at trial warranted the inclusion of a lesser-included-offense instruction for criminally negligent homicide and that the trial court, therefore, erred by failing to include his requested instruction in the

4

charge. Further, Melton requests that this Court reverse his murder conviction and render a judgment of acquittal.

Lesser-included offenses are defined in the Texas Code of Criminal Procedure, which provides in relevant part as follows:

> An offense is a lesser included offense if:
>
> . . .
>
> (3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission . . . .

Tex. Code Crim. Proc. art. 37.09(3). The Penal Code defines the four culpable mental states as follows:

> (a) A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.
>
> (b) A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.
>
> (c) A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.
>
> (d) A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care

5

that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

Tex. Penal Code § 6.03.

Appellate courts "use a two-step analysis to determine if a defendant is entitled to a lesser-offense instruction." *Ritcherson v. State*, 568 S.W.3d 667, 670 (Tex. Crim. App. 2018). First, appellate courts "compare the statutory elements of the alleged lesser offense and the statutory elements and any descriptive averments in the indictment." *Id.* at 670-71. Next, appellate courts must determine if there is "evidence from which a rational jury could find the defendant guilty of only the lesser offense." *Id.* at 671. "That requirement is met if there is (1) evidence that directly refutes or negates other evidence establishing the greater offense and raises the lesser-included offense or (2) evidence that is susceptible to different interpretations, one of which refutes or negates an element of the greater offense and raises the lesser offense." *Id.* "The evidence raising the lesser offense must be affirmatively in the record," meaning that "a defendant is not entitled to a lesser-included offense instruction based on the absence of evidence, and the evidence must be 'directly germane to the lesser-included offense . . . .'" *Id.* (quoting *Skinner v. State*, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997)). Appellate courts "consider all the evidence admitted at trial, not just the evidence presented by the defendant, and if there is more than a scintilla of evidence raising the lesser offense and negating or rebutting an element of the greater offense, the defendant is entitled to a lesser-charge instruction." *Id.* "It does not matter whether the evidence is controverted or even credible." *Id.* "If the jury is charged on alternate theories, the second prong of the lesser-offense test is met 'only if there is evidence which, if believed, refutes or negates every theory which elevates the offense

6

from the lesser to the greater.'" *Id.* (quoting *Arevalo v. State*, 970 S.W.2d 547, 549 (Tex. Crim. App. 1998)).

Melton was charged with and convicted of murder. Consistent with the language of the Penal Code provision governing the offense of murder, the indictment alleged that Melton committed murder by "intentionally or knowingly caus[ing] the death of . . . Williams, by shooting him with a firearm" or "intentionally, with the intent to cause serious bodily injury to . . . Williams, commit an act clearly dangerous to human life, namely, shooting him with a firearm, which caused the death of . . . Williams." *See* Tex. Penal Code § 19.02(b)(1)-(2). As set out above, the trial court included an instruction for the lesser offense of manslaughter, which explained that Melton was guilty of that offense if he "recklessly" "caused the death of . . . Williams." *See id.* § 19.04. Melton requested but was denied an instruction for criminally negligent homicide. "A person commits" that "offense if he causes the death of an individual by criminal negligence." *Id.* § 19.05(a).

Criminally negligent homicide is a lesser-included offense of murder because it differs from murder in the respect that a less culpable mental state suffices to establish its commission. *See* Tex. Code Crim. Proc. art. 37.09(3); *Saunders v. State*, 840 S.W.2d 390, 391 (Tex. Crim. App. 1992); *Jackson v. State*, 248 S.W.3d 369, 371 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd); *Trujillo v. State*, 227 S.W.3d 164, 168 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd); *see also Pitonyak v. State*, 253 S.W.3d 834, 846 (Tex. App.—Austin 2008, pet. ref'd) (explaining that "manslaughter and criminally negligent homicide are included within the proof necessary to establish the" greater offense of intentional or knowing murder). Accordingly, we now address "whether there is some evidence from which the jury rationally could have found

7

that, if appellant was guilty, he was guilty only of the lesser offense of criminally negligent homicide." *See Jackson*, 248 S.W.3d at 371.

"The key to criminal negligence is the failure of the actor to perceive the risk created by his conduct." *Trujillo*, 227 S.W.3d at 168. "If the evidence shows that the defendant's awareness is such that he perceived the risk his conduct created, he is not entitled to a charge of criminally negligent homicide." *Id.* "Evidence that a defendant knows a gun is loaded, that he is familiar with guns and their potential for injury, and that he points a gun at another indicates a person who is aware of a risk created by that conduct and disregards the risk." *Thomas v. State*, 699 S.W.2d 845, 849 (Tex. Crim. App. 1985), *abrogated on other grounds by Najar v. State*, 618 S.W.3d 366, 371-72 (Tex. Crim. App. 2021).

As support for his assertion that he was entitled to an instruction on criminally negligent homicide, Melton points to portions of his testimony and his interviews with the police in which he stated that the gun discharged accidentally, that his hand never touched the trigger, that he did not check to see if the gun was loaded, that he did not think the gun was loaded, and that he did not intend to shoot anyone. Based on this evidence, Melton argues that there was evidence from which the jury could have determined that if he was guilty, he was guilty only of the lesser offense of criminally negligent homicide and that, therefore, the trial court erred by refusing to submit an instruction for the lesser offense.

Evidence suggesting accidental discharge of a firearm does not "necessarily raise the issue" of criminally negligent homicide. *See Thomas*, 699 S.W.2d at 850; *Jackson*, 248 S.W.3d at 372; *see also Glover v. State*, No. 03-06-00232-CR, 2007 WL 3306498, at *6 (Tex. App.—Austin Nov. 8, 2007, pet. ref'd) (mem. op., not designated for publication) (noting that "accidental discharge alone is not enough to warrant an instruction on criminally negligent

8

homicide"). However, in cases like this one where there is evidence suggesting that a weapon was accidentally discharged, that the defendant did not touch the trigger, that the defendant thought the gun was unloaded, and that the defendant did not intend to shoot, courts have explained that the evidence "raises an inference that the defendant did not perceive a risk of injury or death" and requires an instruction on the theory of criminally negligent homicide. *Branham v. State*, 583 S.W.2d 782, 785 (Tex. Crim. App. 1979); *see Levan v. State*, 93 S.W.3d 581, 585 (Tex. App.—Eastland 2002, pet. ref'd) (explaining that instruction was required where evidence showed that defendant thought gun was unloaded and that gun fired when victim attempted to grab it from defendant while he was placing it in duffel bag); *see also Thomas*, 699 S.W.2d at 851 (explaining that *Branham* was correctly decided where defendant testified that she thought weapon was unloaded, did not intend to fire gun, and did not have her finger on trigger and that gun accidentally discharged). *But see Pitonyak*, 253 S.W.3d at 847 (concluding that testimony from defendant that he did not check to see if pistol was loaded was not evidence that he was guilty only of criminally negligent homicide); *Trujillo*, 227 S.W.3d at 168 (determining that defendant's testimony that he raised gun in air to frighten victim and others away, that person ran up to him and hit gun causing it to discharge, and that he did not point gun at victim, did not have his finger on trigger, and did not intend to shoot him did not entitle him to instruction for criminally negligent homicide because evidence did not establish that he did not perceive risk of brandishing loaded gun). Accordingly, under the controlling authority by the Court of Criminal Appeals, Melton was entitled to the instruction on criminally negligent homicide because his testimony raised the inference that he did not perceive a risk of injury or death with what he thought was an unloaded gun. *See Thomas*, 699 S.W.2d at 851.

9

Although it was error not to include the requested instruction, we cannot sustain Melton's first issue. A trial court's erroneous refusal to give a requested instruction on a lesser-included offense is subject to a harm analysis. *Nangurai v. State*, 507 S.W.3d 229, 234 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). Because Melton requested the instruction, we are required to reverse if the refusal to submit the requested instruction resulted in "some harm" to him. *See id.* Typically, when a trial court has failed to submit a lesser-included-offense instruction that was requested and raised by the evidence, appellate courts will find that the error resulted in some harm because the omission left the jury who believed the defendant had committed some crime with just two options: acquit or convict the defendant of the greater offense even though the jury had a reasonable doubt regarding the greater offense. *Saunders v. State*, 913 S.W.2d 564, 571 (Tex. Crim. App. 1995).

However, the Court of Criminal Appeals has recognized that in circumstances like those present here, where the trial court submits one lesser-included-offense instruction raised by the evidence but refused to submit another lesser instruction that the evidence also raised, the defendant might not suffer any harm by the trial court's refusal to submit the other lesser instruction. *See id.* at 572. The Court explained that in these circumstances "[t]he jury's options [are] not limited to conviction of the greater offense or acquittal" and that "the risk that the jury will convict of the greater offense despite its reasonable doubt is not so apparent" because "[t]here is an available compromise" in which the jury "would opt for a lesser included offense that was submitted rather than convict him of the greater offense." *Id.*; *see also Guzman v. State*, 188 S.W.3d 185, 194 n.20 (Tex. Crim. App. 2006) (concluding that any error from omission of instruction for lesser offense of deadly conduct was harmless where lesser-offense instruction was given for aggravated assault and where jury found defendant guilty of greater offense of

10

attempted murder). Similarly, this Court has explained that if a jury chooses to find the defendant guilty of the greater offense as opposed to the submitted lesser-included offense, that may indicate that the trial court's refusal to provide the other lesser-included offense instruction was harmless error. *Jimenez v. State*, 953 S.W.2d 293, 300 (Tex. App.—Austin 1997, pet. ref'd); *see Smith v. State*, No. 04-15-00122-CR, 2016 WL 1464485, at *7 (Tex. App.—San Antonio Apr. 13, 2016, no pet.) (mem. op., not designated for publication); *Levan*, 93 S.W.3d at 586.

In this case, the trial court provided an instruction for the lesser-included offense of manslaughter. *See* Tex. Penal Code § 19.04. The culpable mental states required for criminally negligent homicide and for manslaughter are similar, requiring the assumption of a risk. *See id.* § 6.03(c), (d); *Levan*, 93 S.W.3d at 586. In other words, both offenses concern death caused by a risk that the defendant created. *Levan*, 93 S.W.3d at 586. In order for the jury to have convicted Melton of manslaughter or criminally negligent homicide, it would have had to determine that he did not cause Williams's death intentionally or knowingly and also have concluded that he caused Williams's death through a risk that he created either knowingly for manslaughter or unknowingly for criminally negligent homicide. *See* Tex. Penal Code §§ 6.03, 19.04, .05. By including a manslaughter instruction, the trial court gave the jury the option of convicting Melton because of a risk created by his conduct, but the jury rejected that option and instead found that Melton intentionally or knowingly caused Williams's death. If the jury had a reasonable doubt about the greater offense, it is unlikely the jury would have convicted him of murder, rather than acquit, for lack of a compromise. By its rejection of the lesser offense of manslaughter, it is more likely that the jury convicted Melton because it believed that he intentionally or knowingly caused the death of Williams. *Levan*, 93 S.W.3d at 586-87.

11

For these reasons, we conclude that the error stemming from the trial court's decision not to submit the requested instruction for the lesser offense of criminally negligent homicide was harmless and, therefore, overrule Melton's first issue on appeal.

**Self-Defense**

In his second issue on appeal, Melton urges that the trial court erred by failing to include his requested instruction for self-defense. More specifically, Melton asserts that the trial court should have included the requested instruction because he testified that "he was in reasonable fear for his safety and the safety of others" after "his brother, John Melton, who has a history of violent assaults, pulled a knife."

Chapter Nine of the Penal Code contains several defenses to prosecution, including the provision governing self-defense, which provides that "a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." Tex. Penal Code §§ 9.02, .31(a). "'Reasonable belief' means a belief that would be held by an ordinary and prudent man in the same circumstances as the actor." *Id.* § 1.07(a)(42). "Self-defense is a justification for otherwise unlawful conduct." *Torres v. State*, 7 S.W.3d 712, 714 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd).

Moreover, the use of deadly force is only justified in the circumstances set out by the Penal Code. Tex. Penal Code § 9.31(d). Of significance to this case, "[a] person is justified in using deadly force against another . . . if the actor would be justified in using force against the other" as set out above and "when and to the degree the actor reasonably believes the deadly force is immediately necessary . . . to protect the actor against the other's use or attempted use of

unlawful deadly force." *Id.* § 9.32(a). "A person has the right to defend himself from apparent danger to the same extent as he would if the danger were real." *Dugar v. State*, 464 S.W.3d 811, 818 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) (quoting *Hamel v. State*, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996)). Accordingly, "under certain circumstances, a person may use deadly force against another, even if the other was not actually using or attempting to use unlawful deadly force." *Id.* "The reasonableness of a person's belief that force is immediately necessary is viewed from the person's standpoint at the time that he acted." *Id.*

When determining whether a defensive instruction should have been provided, appellate courts "view the evidence in the light most favorable to the defendant's requested" instruction. *Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006). In general, a defendant is entitled to a jury instruction on a defensive issue if the defensive issue "is raised by the evidence, regardless of the strength or credibility of that evidence." *Farmer v. State*, 411 S.W.3d 901, 906 (Tex. Crim. App. 2013). "The defendant's testimony alone may be sufficient to raise a defensive theory requiring a charge." *Dyson v. State*, 672 S.W.2d 460, 463 (Tex. Crim. App. 1984). "A trial court errs in denying a self defense instruction if there is some evidence, from any source, when viewed in the light most favorable to the defendant, that will support the elements of self defense." *Gamino v. State*, 537 S.W.3d 507, 510 (Tex. Crim. App. 2017). "Whether a defense is supported by the evidence is a sufficiency question reviewable on appeal as a question of law." *Shaw v. State*, 243 S.W.3d 647, 658 (Tex. Crim. App. 2007).

"In determining whether a defense is thus supported, a court must rely on its own judgment, formed in the light of its own common sense and experience, as to the limits of rational inference from the facts proven." *Id.* "[W]hen the defensive evidence merely negates the necessary culpable mental state, it will not suffice to entitle the defendant to a defensive

13

instruction." *Id.* at 659. "Rather, a defensive instruction is only appropriate when the defendant's defensive evidence essentially admits to every element of the offense . . . but interposes the justification to excuse the otherwise criminal conduct." *Id.*; *see also Juarez v. State*, 308 S.W.3d 398, 404 (Tex. Crim. App. 2010) (explaining that doctrine of confession and avoidance "requires an admission to the conduct, which includes both the act or omission and the requisite mental state"). However, "[a]dmitting to the conduct does not necessarily mean admitting to every element of the offense." *Gamino*, 537 S.W.3d at 512. "For example, a defendant" can essentially admit to the commission of murder but still deny "an intent to kill." *Id.* Accordingly, "a defendant can sufficiently admit the conduct alleged and justify a defensive instruction." *Torres*, 7 S.W.3d at 715.

Although Melton correctly points out that he testified at trial and told the police during interviews that he felt afraid and endangered before retrieving his shotgun because his brother had been fighting with someone earlier, pulled a knife and turned on him, had threatened him with a knife before, and had an extensive criminal history for violent offenses, he also repeatedly and consistently denied shooting at Williams. Specifically, Melton testified and told the police that the gun accidentally discharged, that he did not touch the trigger, that he did not point the weapon up or down, and that he did not intend to shoot anyone.

Even viewing the evidence in the light most favorable to Melton's requested instruction, he was not entitled to an instruction on self-defense because he did not sufficiently admit to the alleged conduct. *See Marsh v. State*, 343 S.W.3d 475, 480 (Tex. App.—Texarkana 2011, pet. ref'd) (explaining that actor employing self-defense acts in "intentional or knowing" fashion and that "one cannot act accidentally . . . when acting in self-defense"); *Wyatt v. State*, 889 S.W.2d 691, 695 (Tex. App.—Beaumont 1994, no pet.) (viewing evidence in light most

favorable to instruction and determining that it did not establish need for self-defense instruction because defendant's "version of the shooting was that it was entirely an accident as the weapon inadvertently discharged"); *see also Carsner v. State*, No. 08-11-00326-CR, 2018 WL 2998194, at *12 (Tex. App.—El Paso June 15, 2018, pet. dism'd) (op., not designated for publication) (observing that testimony that defendant accidentally shot victims does not raise claim of self-defense).

For these reasons, we overrule Melton's second issue on appeal.

## Assistance of Counsel

In his final issue on appeal, Melton argues that his trial attorney was ineffective during the punishment phase by failing to object to the portion of the State's closing argument discussing the law on parole and good-conduct time. Specifically, Melton asserts that the middle sentences in the following portion of the State's closing were improper:

> [State]: Because the truth of the matter is even going to prison for the rest of his life, those family members still get to see him, still get to call him, still get to hear his voice, get to write letters to him. Even—no matter what, you just heard that based on parole law and good conduct [time], this defendant is probably going to get out of prison no matter what your sentence is. He's going to get out at some point. Those family members are going to get all of that again.

Melton contends that his trial attorney should have objected to this argument because the comments contravened the directives of the Code of Criminal Procedure as set out in the trial court's jury charge by misleading the jury regarding the role that parole law and good-conduct time might serve in its deliberations. *See* Tex. Code Crim. Proc. art. 37.07, § 4. Further, Melton contends that his trial attorney's failure to object could not have been part of any trial strategy and that the State's unobjected-to comments prejudiced him by encouraging "the jury to

impose an excessive prison term to compensate for or protect against" the possibility that he would be released on parole, particularly where there was no evidence presented at trial showing that he engaged in any prior violent conduct. For these reasons, Melton asserts that his trial counsel was ineffective during the punishment phase and requests that the case be remanded for a new trial on punishment.

To demonstrate ineffective assistance of counsel, a defendant must establish by a preponderance of the evidence both deficient performance by counsel and prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Miller v. State*, 548 S.W.3d 497, 499 (Tex. Crim. App. 2018). First, the defendant must show that his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 687-88; *Ex parte Scott*, 541 S.W.3d 104, 115 (Tex. Crim. App. 2017). Next, the defendant must show the existence of a reasonable probability that the result of the proceeding would have been different absent his counsel's deficient performance. *Strickland*, 466 U.S. at 694; *Burch v. State*, 541 S.W.3d 816, 820 (Tex. Crim. App. 2017). A reasonable probability is one that is sufficient to undermine confidence in the outcome. *See Burch*, 541 S.W.3d at 820; *Nava v. State*, 415 S.W.3d 289, 308 (Tex. Crim. App. 2013). "It will not suffice for [the defendant] to show 'that the errors had some conceivable effect on the outcome of the proceeding.'" *Perez v. State*, 310 S.W.3d 890, 894 (Tex. Crim. App. 2010) (quoting *Strickland*, 466 U.S. at 693). For ineffectiveness claims regarding counsel's performance during the punishment phase, the defendant must "prove that there is a reasonable probability that, but for counsel's errors, the sentencing jury would have reached a more favorable verdict." *Ex parte Rogers*, 369 S.W.3d 858, 863 (Tex. Crim. App. 2012). "Failure to make the required showing of either deficient

16

performance or sufficient prejudice defeats the ineffectiveness claim." *Strickland*, 466 U.S. at 700; *see Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).

Appellate courts reviewing an ineffectiveness claim "indulge in a strong presumption that counsel's conduct was not deficient," *Nava*, 415 S.W.3d at 307-08, and "counsel's conduct is reviewed with great deference, without the distorting effects of hindsight," *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). To rebut that presumption, a claim of ineffective assistance must be "firmly founded in the record," and "the record must affirmatively demonstrate" the meritorious nature of the claim. *Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012); *Goodspeed*, 187 S.W.3d at 392. Evaluations of effectiveness are based on "the totality of the representation." *Frangias v. State*, 450 S.W.3d 125, 136 (Tex. Crim. App. 2013).

In general, direct appeals do not provide a useful vehicle for presenting ineffectiveness claims because the record for that type of claim "is generally undeveloped." *Goodspeed*, 187 S.W.3d at 392; *see Prine v. State*, 537 S.W.3d 113, 117 (Tex. Crim. App. 2017). In addition, before their representation is deemed ineffective, trial attorneys should be afforded the opportunity to explain their actions. *Goodspeed*, 187 S.W.3d at 392. If a trial attorney has not been afforded that opportunity, a reviewing court should not find him to be deficient unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Nava*, 415 S.W.3d at 308 (quoting *Menefield*, 363 S.W.3d at 593).

As set out above, Melton contends that the referenced portion of the State's closing arguments was inconsistent with the version of section 4 of article 37.07 of the Code of Criminal Procedure in effect at the time of his conviction. That former provision mandated that certain instructions governing parole law and good-conduct time be included in jury charges for

the punishment phase, and the jury charge in this case included those instructions. *See* Act of May 26, 2015, 84th Leg., R.S., ch. 770, § 2.08, art. 37.07, sec. 4, 2015 Tex. Gen. Laws 2321, 2367-68 ("former article 37.07, § 4") (current version at Tex. Code Crim. Proc. art. 37.07, § 4).[1] For example, consistent with former section 4, the jury charge in this case stated that Melton would not be eligible for parole until he has served either one half of his sentence or thirty years, that eligibility for parole does not guarantee that parole will be given, that it is not possible to predict how parole law and good-conduct time might be applied to Melton, and that the jury can consider the existence of parole law and good-conduct time but may not consider how either might be applied to Melton. That provision also explained that "[t]his section does not permit the introduction of evidence on the operation of parole and good conduct time laws." *Id.*

In interpreting section 4, this Court has determined that a prosecutor may properly clarify the meaning of the jury-charge instructions pertaining to parole law and good-conduct time but may not "comment on the specific extent to which parole law and good-conduct time may be applied to the particular defendant on trial." *See Branch v. State*, 335 S.W.3d 893, 907 (Tex. App.—Austin 2011, pet. ref'd); *see also Hawkins v. State*, 135 S.W.3d 72, 84 (Tex. Crim. App. 2004) (explaining that "[i]t was not improper for the prosecutor to accurately restate the law given in the jury charge nor was it improper for the prosecutor to ask the jury to take the existence of that law into account when assessing punishment"); *Pryor v. State*, No. 03-13-00347-CR, 2015 WL 2066228, at *4 (Tex. App.—Austin May 1, 2015, pet. ref'd) (mem. op., not designated for publication) (concluding "that the prosecutor's argument was improper because it

---

[1] The current version no longer requires the good-conduct instruction for certain convictions, including murder. *See* Tex. Code Crim. Proc. art. 37.07, § 4.

18

went beyond merely explaining the jury charge and instead urged the jury to consider when Pryor might actually be released on parole").

Further, in the context of claims of ineffective assistance of counsel, one of our sister courts of appeals has determined that the failure to object to arguments concerning parole law constituted ineffective assistance as a matter of law when the trial attorney failed to object to the prosecutor's argument inviting the jury to consider parole law when assessing punishment and incorrectly informing the jury that an individual sentenced to forty years' imprisonment could become eligible for parole in two years. *Valencia v. State*, 966 S.W.2d 188, 190, 191 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd). This Court has also determined that the failure to object to improper jury argument constituted ineffective assistance where the prosecutor incorrectly argued that a defendant sentenced to life would be released from prison with parole and good-conduct time in as quickly as seven or eight years after being sent to prison and under no circumstances would the defendant serve fifteen to twenty years and where the hearing on a motion for new trial revealed that the defendant's attorney had no strategy for not objecting. *See Branch*, 335 S.W.3d at 907, 909-10.

The State in this case did not provide the jury with an inaccurate calculation like those described above. Instead, in this case, the State made a brief exchange suggesting that Melton "is probably going to get out of prison" and will "get out at some point" and did not otherwise reference parole law or good-conduct time. *See Frangias*, 450 S.W.3d at 136 (explaining that defendant is not entitled to representation that is error free); *Gish v. State*, No. 02-09-00034-CR, 2011 WL 167076, at *3 (Tex. App.—Fort Worth Jan. 13, 2011, no pet.) (mem. op., not designated for publication) (noting that to prevail defendant must show more than impropriety of prosecutor's argument and must show that failure to object rendered counsel

ineffective); *see also Wiley v. State*, No. 12-14-00126-CR, 2015 WL 3765383, at *2-3 (Tex. App.—Tyler June 17, 2015, no pet.) (mem. op., not designated for publication) (concluding that trial counsel's failure to object could not have been based on reasonable trial strategy where State "repeatedly referred to Appellant's parole as if his eventual release were not in doubt").[2]

Perhaps more importantly, unlike in *Branch*, in this case there was no hearing on a motion for new trial in which trial counsel was given the opportunity to explain the reasons for not objecting. On the limited record we have before us, there is no information regarding trial counsel's strategy for not objecting. *See Johnson v. State*, 68 S.W.3d 644, 655 (Tex. Crim. App. 2002) (noting argument that trial counsel was ineffective for failing to object to State's argument that jury "should not consider parole law at all because it was subject to change," observing that record on direct appeal did not contain trial counsel's reasons for not objecting, and determining that record did not overcome presumption of effectiveness); *see also Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999) (noting that because record was silent as to trial counsel's reasoning, defendant "has failed to rebut the presumption this was a reasonable decision"); *Sanchez v. State*, No. 07-06-00435-CR, 2008 WL 2405889, at *3 (Tex. App.—

---

[2] In his brief, Melton refers to several appellate cases as support for his argument, but we find those cases to be distinguishable. The first group of cases addressed the issue of improper jury argument rather than ineffective assistance of counsel, which present different considerations for review on appeal. *See Hawkins v. State*, 135 S.W.3d 72, 74, 85 (Tex. Crim. App. 2004); *Clanton v. State*, 528 S.W.2d 250, 252-53, 255 (Tex. Crim. App. 1975); *Chester v. State*, 167 S.W.3d 935, 936, 938 (Tex. App.—Amarillo 2005, pet. ref'd); *Perez v. State*, 994 S.W.2d 233, 236, 238 (Tex. App.—Waco 1999, no pet.). The remainder of the cases do not address allegedly improper jury arguments concerning parole law as direct issues or indirectly in the context of ineffective assistance of counsel. *See Martinez v. State*, 17 S.W.3d 677, 692, 694 (Tex. Crim. App. 2000); *Mosely v. State*, 983 S.W.2d 249, 258, 260 (Tex. Crim. App. 1998); *Ex parte Walker*, 794 S.W.2d 36, 36, 37 (Tex. Crim. App. 1990); *Ex parte Duffy*, 607 S.W.2d 507, 525 (Tex. Crim. App. 1980), *overruled on other grounds by Hernandez v. State*, 988 S.W.2d 770 (Tex. Crim. App. 1999); *Booker v. State*, 103 S.W.3d 521, 525, 540 (Tex. App.—Fort Worth 2003, pet. ref'd); *Simms v. State*, 848 S.W.2d 754, 758 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd).

Amarillo 2008, no pet.) (mem. op., not designated for publication) (deciding that direct appeal record did not overcome presumption that trial counsel's failure to object to argument concerning parole law "might be considered trial strategy"); *Diaz v. State*, Nos. 14-02-01224—01227-CR, 2003 WL 22976098, at *4 (Tex. App.—Houston [14th Dist.] Dec. 18, 2003, pet. ref'd) (mem. op., not designated for publication) (explaining that nothing in record on direct appeal overcame presumption that trial counsel's failure to object to State's argument that defendant "will get out" and will be younger than lawyer when released "was reasonable and professional" and presuming "that counsel had a plausible reason for his actions").

Further, trial counsel urged for leniency by referring to mitigating evidence, Melton's apology to Williams's family during the punishment hearing, and Melton's three children for whom he is responsible, and a decision not to object during jury argument can be sound trial strategy where objecting might undercut a plea for leniency. *See Ex parte Scott*, 541 S.W.3d at 124-25. Moreover, as set out above, the State's comments were brief, and there can be a sound strategy not to object where "only a passing, but possibly objectional, reference is made and the defense attorney believes that the reference would largely go unnoticed." *See Ex parte Bryant*, 448 S.W.3d 29, 41 (Tex. Crim. App. 2014). Additionally, when deciding not to object, Melton's trial counsel could have reasonably concluded that the need for an objection was lessened by the fact that the trial court had just read the charge to the jury, which included the required instruction under former section 4 of article 37.07 that eligibility for parole does not guarantee that parole will be granted, that it cannot be accurately predicted how parole law and good-conduct time might be applied because the application of those laws will depend on prison and parole authorities, and that the jury could not consider the extent to which good-conduct time and parole will ultimately be applied to Melton. *See* former article 37.07, § 4; *see also*

21

*Strickland*, 466 U.S. at 694-95 (explaining that appellate courts must presume, absent evidence to contrary, that jury "acted according to law" and "reasonably, conscientiously, and impartially appl[ied] the standards that govern the decision").

Given the limited record in this case and the nature of the State's comments, we conclude that Melton has failed to show that his counsel's failure to object fell below an objective standard of reasonableness under prevailing professional norms. *See Strickland*, 466 U.S. at 687-88. Accordingly, we overrule Melton's final issue on appeal.

## CONCLUSION

Having overruled all of Melton's issues on appeal, we affirm the trial court's judgment of conviction.

_____

Thomas J. Baker, Justice

Before Justices Goodwin, Baker, and Kelly

Affirmed

Filed: August 31, 2022

Publish